**Wendy VIVIAN, Plaintiff,**

v.

**Gerry MADISON, Defendant–Movant.**

No. 98–849.

Supreme Court of Iowa.

Oct. 13, 1999.

Victoria L. Herring, Des Moines, for defendant-movant.

Roxanne Barton Conlin of Roxanne Conlin & Associates, P.C., Des Moines, for plaintiff.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

This case comes to us as a certified question of law from the United States District Court for the Southern District of Iowa. Specifically, we are asked:

Is a supervisory employee subject to individual liability for unfair employment practices under Iowa Code section 216.6(1) of the Iowa Civil Rights Act?

This question is certified to us pursuant to Iowa Code chapter 684A (1997). We conclude that the Iowa Civil Rights Act does authorize the subjecting of a supervisory employee to individual liability.

I. Background Facts and Proceedings

Plaintiff, Wendy Vivian, filed a multi-count complaint in federal district court against her employer, United Parcel Service (UPS), and her supervisor, Gerry Madison. Among other claims, Vivian alleges that during her tenure with UPS she was subjected to repeated acts of racial and sexual discrimination in employment in violation of Title VII, 42 U.S.C. § 2000e, *et seq.,* and Iowa Code chapter 216 (1995) (ICRA).

Defendant Madison filed a motion to dismiss on the ground that the ICRA does not impose individual liability on supervisory employees. District Judge Ronald E. Longstaff noted that a split of authority exists among Iowa federal courts that have considered the matter. *See, e.g., Bales v. Wal–Mart Stores, Inc.,* 972 F.Supp. 483 (S.D.Iowa 1997), *aff'd without addressing the Iowa claim,* 143 F.3d 1103 (8th Cir. 1998); *Fee v. Bridgestone Firestone Tire*

& Rubber Co., No. 4–95–CV–70666 (S.D.Iowa Oct. 6, 1997); *Wells v. Lamson & Sessions,* .No. 3–97–CV–10019 (S.D. Iowa April 8, 1997); *Moshier v. Linn County,* No. C95–196 (N.D. Iowa June 19, 1996); *Tenny v. Basilica of Saint John, 1995 WL 935700,* No. 4–94–CV–30102 (S.D.Iowa May 23, 1995); *Williamson v. Altorfer Mach. Co.,* No. 3–94–CV–80130 (S.D.Iowa Jan. 13, 1995). Absent an un-qualified precedent, he concluded that the issue required a definitive interpretation and construction of the Iowa Civil Rights Act, which gave rise to this certified ques-tion of state law.[1]

## II. Discussion

### A. Iowa Statutes

 The Iowa Civil Rights Act, chapter 216 of the Iowa Code, prohibits various forms of discrimination in employment. It was passed in 1965 in an effort to establish parity in the workplace and market oppor-tunity for all. The ICRA was modeled after Title VII of the United States Civil Rights Act. Iowa courts therefore tradi-tionally turn to federal law for guidance in evaluating the ICRA. *King v. Iowa Civil Rights Comm'n,* 334 N.W.2d 598, 601 (Iowa 1983). Federal law, however, is not controlling. We look simply to the analyt-ical framework utilized by the federal courts in assessing federal law and not to a substitution of the language of the federal statutes for the clear words of the ICRA. *Hulme v. Barrett,* 449 N.W.2d 629, 631 (Iowa 1989).

In *Harbit v. Voss Petroleum,* 553 N.W.2d 329 (Iowa 1996), for example, we agreed with the logic propounded by a majority of the federal circuits in ruling that there was no individual liability for supervisors under Title VII. *Harbit,* 553 N.W.2d at 330. Title VII, however, differs from the ICRA in several key respects.

First, Iowa Code section 216.6(1)(a) pro-vides in pertinent part that:

It shall be an unfair or discriminatory practice for any:

a. *Person* to refuse to hire, accept, regis-ter, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any em-ployee because of the age, race, creed, color, sex, national origin, religion or disability of such applicant or employee, unless based upon the nature of the occupation.

(Emphasis added.)

Title VII, on the other hand, states only that:

It shall be an unlawful employment practice for an *employer:*

1. To fail or refuse to hire or to dis-charge any individual, or otherwise dis-criminate against any individual with respect to his compensation, terms, con-ditions, or privileges of employment be-cause of an individual's race, color, reli-gion, sex, or national origin; . . . .

42 U.S.C. § 2000e–2 (emphasis added).

Second, the ICRA incorporates an aid-ing and abetting provision codified at sec-tion 216.11 under which:

It shall be an unfair or discriminatory practice for:

1. Any person to intentionally aid, abet, compel, or coerce another person to en-gage in any of the practices declared unfair or discriminatory by this chapter.

Iowa Code § 216.11.

Title VII contains no similar language.

Third, the remedial sections of the ICRA apparently extend beyond those found in Title VII in that a claimant may commence a cause of action for relief

---

1. Vivian has since chosen to voluntarily dis- miss her claims against UPS with prejudice.

against a *person,* employer, employment agency, or labor organization alleged to have committed a discriminatory or unfair practice. Iowa Code § 216.15(1). Title VII does not authorize claims against persons. *See* 42 U.S.C. § 2000e–5(b).

### B. Issues

■ At issue is whether the statutory use of the word "person" entitles a plaintiff to seek a personal liability judgment against a supervisor accused of discrimination. Section 216.2(11) defines a person as "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, receivers, and the state of Iowa and all political subdivisions and agencies thereof." Although not referenced specifically, supervisors appear to fall within the gamut of persons, particularly in light of section 216.18 which instructs us to construe this chapter broadly to effectuate its purposes.

### C. Contentions

Plaintiff, Vivian, maintains that use of the word "person" in section 216.6(1)(a) entitles her to seek a personal liability judgment against Madison in his individual capacity as supervisor. Vivian urges us to look to the plain meaning of the statute. She points to the express language used and the fact that the legislature makes a distinction between person, employer and numerous other designations within section 216.6(1)(a).

Defendant, Madison, on the other hand, likens the ICRA to Title VII of the U.S. Civil Rights Act. He contends that the two laws are analogous to one another and that the ICRA should be explicated in conformance with the national trend denying individual supervisor liability under the federal Act. Madison asserts that the language of section 216.6(1)(a) refers to an employer/employee relationship, a relationship connoting that only an employer can hire, fire, refer, accept, classify or otherwise discriminate in employment. He argues that the ICRA was only intended to hold employers liable for workplace discrimination and that had the legislature wished to subject supervisors to personal liability, it would have specifically said so.

In support of this view, Madison draws our attention to the seeming incongruity between Vivian's construction of the law and section 216.6(6)(a) which exempts employers of fewer than four persons from liability. Madison is unable to reconcile these ostensibly disparate schemes, under which he theorizes that a supervisor for an employer of three or less would escape liability while a supervisor working for an employer of four or more could be held liable for discrimination.

For the reasons expressed previously, we conclude that the ICRA is sufficiently distinct from Title VII so as to require an independent analysis. In so doing, we consider the intent of the legislature as expressed in the plain meaning of the law.

### D. Legislative History

There is surprisingly little to discover with regard to the legislative history of the Iowa Civil Rights Act. It was apparently based on the federal statute codified under Title VII at 42 U.S.C. § 2000e–2(a)(1) (1964), although no direct reference to the law appears on the record. Few amendments have been made since its enactment.

Our only sources of interpretive guidance come from section 216.18, which states that the chapter should be construed broadly to effectuate its purposes, and section 729.4, a criminal provision which actually preceded implementation of the ICRA. Iowa Code § 729.4 holds that:

1. Every person in this state is entitled to the opportunity for employment on equal terms with every other person. A person or employer shall not discrimi-

nate in the employment of individuals because of race, religion, color, sex, national origin, or ancestry....

. . . .

3. Any person, employer, labor union or organization or officer of a labor union or organization convicted of a violation of subsections 1 or 2 shall be guilty of a simple misdemeanor.

We find it significant that the words "person" and "employer" are used in conjunction with one another, indicating the legislature's clear perception of their separate meanings.

E. The Iowa Courts

Two major cases to come through our court pertaining to the issue at hand are *Grahek v. Voluntary Hospital Cooperative Ass'n of Iowa Inc.*, 473 N.W.2d 31 (Iowa 1991), and *Sahai v. Davies*, 557 N.W.2d 898 (Iowa 1997). In *Grahek*, the plaintiff, a hospital administrator, filed an age discrimination suit after being terminated from his post. The defendants, VHI, VHA and St. Luke's, filed a motion for summary judgment. The Iowa Civil Rights Commission and the district court both granted the motion because Grahek's petition was not timely filed in accordance with Iowa Code section 601A.15(12) (1987).[2] Grahek appealed insisting that several of his claims were actually founded in contract rather than discrimination law and should not be subject to the time limitations of the ICRA. We held that those causes of action which were indistinguishable from the civil rights complaints were effectively preempted. *Grahek*, 473 N.W.2d at 35.

A few of the claims were allowed to survive. In reaching our conclusions, we determined that the ICRA would not preclude a claim for intentional interference with contractual relations if defendant, VHA, was not a party to the employment contract between Grahek and VHI/St. Luke's. *In that context* we said:

> Obviously, only the employer, and not third parties, can discharge an employee. Moreover we hold that the language *'otherwise discriminate in employment'* pertains only to employers. Therefore acts of third parties are not unfair discriminatory practices for purposes of section 601A.16(1), and actions against such third parties are not preempted by chapter 601A.

*Id.*

This statement did not address the question of whether a supervisor could be held personally liable under section 216.6(1)(a). *Grahek* is therefore no authority on the issue we now consider.

In *Sahai*, a clinical physician was sued for failing to refer a woman for employment in a meat packing facility due to the fact that she was pregnant. Although the woman, Davies, was in perfect health, Dr. Sahai did not think it appropriate for pregnant women to work on assembly lines. The district court found Sahai guilty of sexual discrimination in employment. We reversed, ruling that the doctor was giving an independent medical opinion, that his judgment was based on professional knowledge and experience, that his role was advisory, and that his conduct did not amount to discrimination. *Sahai*, 557 N.W.2d at 901. In the majority decision, with one justice concurring in judgment only, we declared that although the language "any person"

> extends the prohibition of the act to some situations in which a person guilty of discriminatory conduct is not the actual employer of the person discriminated against, it does not, in our view, embrace the actions of the clinic and Dr. Sahai in the present case.

*Id.*

The dissent agreed with regard to nonemployer liability remarking: "The ma-

---

**2.** Chapter 601A of the Iowa Code was transferred to chapter 216 in Code 1993.

jority concedes, as it must, that persons other than employers may be held liable under the Iowa Code section 216.6(1)(a)." *Id.* at 903.

In *Sahai*, we simply denied that the physician was in a position to control the company's hiring decisions, therefore leaving open the possibility that supervisors are subject to individual liability.

### F. Other Jurisdictions

#### 1. Federal District Courts in Iowa

The only published opinion directly concerning supervisor liability under the ICRA is *Bales v. Wal–Mart Stores, Inc.*, 972 F.Supp. 483 (S.D.Iowa 1997). Thereunder, it was ruled that no liability could attach. *Bales*, 972 F.Supp. at 483. The court based its reasoning primarily on *Grahek* and federal court precedent under Title VII. *Id.* As we have noted, *Grahek* is no authority on the issue and Title VII differs significantly from the ICRA.

#### 2. California Courts

Courts in other states have struggled with the controversy surrounding individual liability under their own civil rights laws.[3] Our review of their resolutions is of limited precedential value due to the con-

siderable variation between those statutes and the ICRA. The California Supreme Court's analysis of that state's Fair Housing and Employment Act, (FEHA), Cal. Gov.Code section 12900 *et seq.* (West 1998), however, is somewhat relevant.

FEHA is unique in that it distinguishes harassment from discrimination. With regard to discrimination it is "an unlawful employment practice for an employer to … discriminate against a person in … employment." FEHA § 12940(a). "Employer" is defined to include "any person employing five or more other persons, or any person acting as an agent of an employer." *Id.* § 12926(d).

By contrast, with respect to harassment, FEHA provides that it is "unlawful for an employer … or any other person … to harass an employee or applicant." *Id.* § 12940(h)(1). Hereunder employer is defined as "any person regularly employing one or more other persons…." *Id.* § 12940(h)(3)(A).

Not surprisingly, the California courts have had some difficulty reaching a consensus on the issue of individual liability under FEHA. The California Supreme Court recently took the matter on appeal after two appellate circuits ruled in contradiction to one another. *See Reno v. Baird,*

---

**3.** Many states have found individual liability either by interpreting phrases such as "employer or agent of the employer" to include supervisors or coworkers, or through recourse to aiding and abetting provisions similar to that of ICRA section 216.11. *See Dici v. Pennsylvania*, 91 F.3d 542 (3d Cir.1996); *Comiskey v. Automotive Indus. Action Group*, 40 F.Supp.2d 877 (E.D.Mich.1999); *Meara v. Bennett*, 27 F.Supp.2d 288 (D.Mass.1998); *Wyss v. General Dynamics Corp.*, 24 F.Supp.2d 202 (D.R.I.1998); *Tyson v. CIGNA Corp.*, 918 F.Supp. 836 (D.N.J.1996), *aff'd*, 149 F.3d 1165 (3d Cir.1998); *Broomfield v. Lundell*, 159 Ariz. 349, 767 P.2d 697 (Ariz.Ct. App.1988); *Conway v. City of Hartford*, 9 N.D.L.R. & 167, 1997 WL 78585 (Conn.Super.Ct. Feb.4, 1997); *Wallace v. Skadden, Arps*, 715 A.2d 873 (D.C.1998); *Genaro v. Central Transp., Inc.*, 84 Ohio St.3d 293, 703 N.E.2d 782 (1999); *Schram v. Alberton's, Inc.*,

146 Or.App. 415, 934 P.2d 483 (1997); *Carr v. U.P.S.*, 955 S.W.2d 832 (Tenn.1997); *Johnson v. Canadian Pac. Ltd.*, 522 N.W.2d 386 (Minn. Ct.App.1994), *rev'd sub nom. on other grounds, Dietrich v. Canadian Pac. Ltd.*, 536 N.W.2d 319 (Minn.1995); *Holstein v. Norandex, Inc.*, 194 W.Va. 727, 461 S.E.2d 473 (1995). *But see Lenhardt v. Basic Inst. of Tech., Inc.*, 55 F.3d 377 (8th Cir.1995); *Foley v. Mobil Chem. Co.*, 170 Misc.2d 1, 647 N.Y.S.2d 374 (N.Y.Sup.1996); *cf. Foster v. Shore Club Lodge, Inc.*, 127 Idaho 921, 908 P.2d 1228 (1995); *Hill v. Gateway Reg'l Health Sys., Inc.*, 1998 WL 412623 (Ky.Ct. App. July 24, 1998); *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671 (Tex.Ct.App.1997) (denying liability under state statutes which only refer to "employers" committing acts of discrimination).

67 Cal.2d 671, 63 Cal.Rptr. 377, 433 P.2d 169 (Ct.App. 1997) (liability sustained), *rev'd,* 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333 (1998); *Janken v. G.M. Hughes Elecs.,* 46 Cal.App.4th 55, 53 Cal. Rptr.2d 741 (1996) (liability denied).

In *Reno,* the supreme court held that FEHA did not create supervisor liability for discriminatory conduct, adopting many of the arguments made in *Janken. Reno,* 76 Cal.Rptr.2d 499, 957 P.2d at 1334. Its decision was predicated to a great extent on the statutory distinctions between discrimination and harassment, which it felt indicated a legislative intent to narrow the scope of liability for discrimination. First, the court observed that the prohibition against discrimination only mentions employers, whereas the interdiction on harassment encompasses employers and other persons. *Id.* at 1336.

Second, the definition of an employer who discriminates is far more restrictive than one who harasses. Even though the "agent of the employer" language is utilized, the court sided with a majority of the other state and federal jurisdictions in construing similar language to establish respondeat superior, rather than individual liability. *Id.* at 1337–39. Moreover, the court felt that it would be incongruous to subject supervisors to liability for discrimination when only employers of five or more could be held equally liable. *Id.* at 1339–40.

FEHA's proscription on employment discrimination essentially mirrors that of Title VII of the United States Code, under which liability would not properly attach. The statutory scheme for harassment, however, more closely parallels that of the ICRA, thereby requiring a different analysis. Although the court in *Janken* was not asked to affirm supervisory liability in that context, it recognized that the language "any person" extends to individuals and thereby includes supervisory employees. *Janken,* 53 Cal.Rptr.2d at 745. The su-

preme court apparently affirmed this proposition when it said that: (1) provisions involving harassment do indeed apply to individual persons as well as employers, *Reno,* 76 Cal.Rptr.2d 499, 957 P.2d at 1345; and (2) small employers can be sued for harassment, but they cannot be sued for discrimination. *Id.* at 1339.

We acknowledge that California's distinction between harassment and discrimination is inapplicable to the case at bar. However, FEHA's treatment of harassment is comparable to section 216.6(1)(a) of the ICRA, and the California court's assessment of liability thereunder is instructive.

### 3. The New York Statute

In *Tomka v. Seiler,* 66 F.3d 1295 (2d Cir.1995), the Second Circuit deliberated the issue of supervisor liability under both Title VII and the New York Human Rights Law (N.Y.HRL), N.Y. Exec. Law section 296 *et seq.* (McKinney 1994), which contains an aiding and abetting provision resembling that found in the ICRA. *See* NYHRL § 296(6). The *Tomka* court thoroughly and persuasively examined the statutory structure, legislative history and language of Title VII before reaching its determination that employees with supervisory control could not be held personally liable under Title VII. *Tomka,* 66 F.3d at 1313–17. Yet in the *Tomka* court's separate scrutiny of the NYHRL, it came to the opposite conclusion, noting that it was "an unlawful discriminatory practice 'for *any person* to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.'" *Id.* at 1317 (quoting N.Y. Exec. Law § 296(6) (emphasis added)).

The reasoning of the *Tomka* court again gives support to our belief that the Iowa legislature intended the ICRA to be broad enough to embrace supervisor liability inasmuch as it included an aiding and abet-

ting statute specifically prohibiting a discriminatory practice by "any person." *See* Iowa Code § 216.11.

### III. Conclusion

■ The legislature's use of the words "person" and "employer" in section 216.6(1), and throughout the chapter, indicates a clear intent to hold a "person" subject to liability separately and apart from the liability imposed on an "employer." A contra interpretation would strip the word "person" of any meaning and conflict with our maxim of statutory evaluation that laws are not to be construed in such a way as to render words superfluous. *Kungys v. United States*, 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839, 858 (1988); *see also In re G.J.A.*, 547 N.W.2d 3, 6 (Iowa 1996). Moreover, we are guided by what the legislature actually said, rather than what it could or should have said. *Marcus v. Young*, 538 N.W.2d 285, 289 (Iowa 1995); *State v. Hatter*, 414 N.W.2d 333, 337 (Iowa 1987).

For the reasons expressed above in analyzing the various arguments and cases, we hold that a supervisory employee is subject to individual liability for unfair employment practices under Iowa Code section 216.6(1) of the Iowa Civil Rights Act.

**CERTIFIED QUESTION ANSWERED.**