**Regina Ann JOHNSON, Plaintiff,**

v.

**BE & K CONSTRUCTION CO., LLC and Archer Daniels Midland Co., Defendants.**

No. 3:08–cv–00150.

United States District Court, S.D. Iowa, Davenport Division.

Jan. 16, 2009.

John F. Doak, Katz Huntoon & Fieweger, Moline, IL, Jennifer J. Pomaranski, Timothy A. Wolfe, Meckler Bulger Tilson Marick & Pearson LLP, Chicago, IL, for defendants.

Dorothy A. O'Brien, Attorney & Counselor Law, PLC, Davenport, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is Defendant, Archer Daniels Midland Company's ("ADM"), Motion to Dismiss Plaintiff's Complaint. Clerk's No. 5. Plaintiff, Regina Ann Johnson ("Plaintiff") filed a resistance to the Motion (Clerk's No. 12), and Defendant replied (Clerk's No. 13). The matter is fully submitted.

## I. FACTUAL BACKGROUND

On October 20, 2008, Plaintiff filed a Petition in the Iowa District Court for Clinton County, Iowa. Clerk's No. 1(2). Plaintiff's Petition alleges that she is an African American female and that she was "employed with BE & K [Construction Company, LLC ("BE & K") ] at the ADM facility in Clinton, Iowa from February 2006 through February 29, 2008." *Id.* ¶¶ 1, 4. Plaintiff asserts that white employees were allowed to use ADM's telephone for personal business and for social calls. *Id.* ¶ 5. In February 2008, Plaintiff had problems with her home water heater. *Id.* ¶ 6. It appears that Plaintiff had been "warned that if she were caught on the phone, she would be terminated." *Id.* ¶ 9. Nonetheless, Plaintiff received permission from an ADM supervisor to use ADM's telephone to make a service call for her home water heater. *Id.* ¶ 7. Despite having obtained permission, ADM manager Bill Tanner "demanded that [Plaintiff] be fired from the ADM Warehouse and BE & K made the decision to fire her." *Id.* ¶ 9. Plaintiff contends that both ADM and BE & K are liable for discrimination under the Iowa Civil Rights Act ("ICRA"). *See* Iowa Code § 216.1 et seq. Specifically, Plaintiff alleges that BE & K discriminated against her because of her race and that "ADM discriminated against [her] because of her race by influencing the decision of BE & K to terminate [her]." *Id.* ¶¶ 10–11.

On December 1, 2008, BE & K removed the action to federal court, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[1] On December 8, 2008, ADM filed the present Motion to Dismiss Plaintiff's Complaint. ADM argues that Plaintiff's ICRA claim against it

---

1. Specifically, BE & K asserts that Plaintiff is a citizen of Iowa, BE & K is a citizen of Delaware and Alabama, ADM is a citizen of Delaware and Illinois, and that the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* Notice of Removal ¶¶ 4–5.

must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff was never an employee of ADM and, therefore, lacks standing to maintain the present action against ADM.

## II. STANDARD OF REVIEW

In addressing a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, this Court must follow the standard of review articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court determined that the standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief[,]" has "earned its retirement." *Twombly*, 127 S.Ct. at 1968, 1969. The Supreme Court held that a viable complaint must now include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 1965. The new standard is not a "heightened fact pleading" requirement, but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 1965, 1974.

Under *Twombly*, as was the case under *Conley*, the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *See id.* at 1964–65; *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir.1997). Moreover, when considering a motion to dismiss

for failure to state a claim, a court must accept the facts alleged in the complaint as true, even if doubtful. *See Twombly*, 127 S.Ct. at 1965; *see also Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Thus, a well-pled complaint may proceed even if it appears "that recovery is very remote and unlikely." *Twombly*, 127 S.Ct. at 1965 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

## III. LAW AND ANALYSIS

The ICRA provides:

1. It shall be an unfair or discriminatory practice for any:

 a. Person to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the age, race, creed, color, sex, sexual orientation, gender identity, national origin, religion, or disability of such applicant or employee, unless based upon the nature of the occupation....

Iowa Code § 216.6. The ICRA further contains an aiding and abetting provision, which provides that it "shall be an unfair or discriminatory practice for ... [a]ny person to intentionally aid, abet, compel, or coerce another person to engage in any of the practices declared unfair or discriminatory by this chapter." *Id.* § 216.11(1). A "person" under the ICRA is defined as "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, receivers, and the state of Iowa and all political subdivisions and agencies thereof." *Id.* § 216.2(12).

There is no dispute that Plaintiff was formally employed by BE & K and not by

ADM. ADM contends that this fact precludes Plaintiff from maintaining her discrimination claim against it because ADM was merely a customer of Plaintiff's employer. According to ADM, the ICRA "does not impose liability on an employer's customer" because the Iowa Supreme Court has "interpreted 'person' in Section [216.6(1)(a)] to include only employers in the context of the statutory language." Def.'s Br. at 2. ADM further contends that Plaintiff's claim must also fail under § 216.11 because that provision was not intended to encompass factual situations such as the one at issue. The Court will address each argument in turn.

### A. *Iowa Code § 216.6(1)(a)*

Defendant cites *Grahek v. Voluntary Hospital Cooperative Association of Iowa, Inc.* in support of its contention that liability under § 216.6(1)(a) is limited to employers. *See* 473 N.W.2d 31 (Iowa 1991). In *Grahek*, the Iowa Supreme Court stated: "Obviously, only the employer, and not third parties, can discharge an employee. Moreover, we hold that the language 'otherwise discriminate in employment' pertains only to employers. Therefore, acts of third parties are not 'unfair or discriminatory practice[s]' for purposes of section [216.6]...." [2] *Id.*

While *Grahek* has never been overruled, a careful reading of the factual context of the case and of subsequent case law makes clear that the quoted language cannot be read quite so broadly as ADM proposes. In *Grahek*, the plaintiff was suing, amongst others, the Voluntary Hospital Cooperative Association of Iowa ("VHA") for breach of contract, tortious interference with a contract, and age discrimination under the ICRA. *Id.* at 33. The district court determined that all of the plaintiff's claims were based upon dis-

crimination and that the tort claims against VHA were, therefore, preempted by the ICRA. *Id.* Because the ICRA claim was time-barred, the district court dismissed the plaintiff's entire action. *Id.* Upon review, the Iowa Supreme Court found that it was unclear on the record whether VHA was a party to the plaintiff's employment contract, meaning it was unclear whether VHA was or was not the plaintiff's employer. *Id.* at 35. The court found that, if VHA was *not* a party to the employment contract, it could not be held liable under the ICRA for discharging the plaintiff because "only the employer, and not third parties, can discharge an employee." *Id.* Accordingly, the court remanded the matter to the district court for further proceedings because if VHA was *not* a party to the employment contract and, thus, not liable under the ICRA, the plaintiff's tort claims against it would survive.

About five and one-half years after *Grahek*, the Iowa Supreme Court explicitly recognized that liability under § 216(a)(1) is not limited to employers. In *Sahai v. Davies*, a pregnant plaintiff seeking employment at a meat packing plant was advised that she would be hired upon passing a physical examination and drug test. 557 N.W.2d 898, 899 (Iowa 1997). Dr. Sahai, the physician that examined plaintiff, filled out a form to be provided to the employer, checking "no" in response to the question of whether the plaintiff was approved for the prospective work, apparently because he believed that pregnant women should not work in the type of assembly line job at issue. *Id.* at 900. The plaintiff eventually sued the employer and Dr. Sahai, alleging that the failure to hire her as a result of her pregnancy was unlawful employment discrimination on the basis of sex. *Id.* In reversing the decision of the

---

2. At the time of the *Grahek* decision, § 216.6 was codified at Iowa Code § 601A.16(1).

district court finding Dr. Sahai guilty of sexual discrimination in employment, the Iowa Supreme Court clearly stated that the "any person" language of § 216.6 "extends the prohibition of the act to some situations in which a person guilty of discriminatory conduct is not the actual employer of the person discriminated against." *Id.* at 901. The Court, however, declined to find that this expanded prohibition "embrace[d] the actions of [Dr. Sahai]" because "within the context of the . . . hiring decision [Dr. Sahai's] role was advisory. The advice being sought was an independent medical judgment. Recommendations made in this context that are directly responsive to a prospective employer's request are not in our view discriminatory actions." [3] *Id.* at 901.

Nearly two years after *Sahai,* in *Vivian v. Madison,* the Iowa Supreme Court further delineated the boundaries of § 216.6(1)(a) when it was presented with the following certified question of law from United States District Court Judge Ronald E. Longstaff: "Is a supervisory employee subject to individual liability for unfair employment practices under Iowa Code section 216.6(1) of the Iowa Civil Rights Act?" 601 N.W.2d 872, 872 (Iowa 1999). In analyzing the certified question, the court noted several differences between federal discrimination statutes under Title VII and the ICRA. *Id.* at 873. First, the court pointed out that Title VII makes it unlawful for an "employer" to discriminate in employment practices, while the ICRA

makes it unlawful for any "person" to discriminate in employment practices.[4] *Id.* at 873. Second, the court distinguished the ICRA from Title VII by pointing out that the ICRA contains an aiding and abetting provision in § 216.11, which Title VII does not contain. *Id.* Finally, the court noted that the "remedial sections of the ICRA apparently extend beyond those found in Title VII in that a claimant may commence a cause of action for relief against a *person* . . . alleged to have committed a discriminatory or unfair practice" while Title VII "does not authorize claims against persons." *Id.*

The court next turned to a careful review of relevant case law. With regard to *Grahek,* the *Vivian* court limited its decision to the "context" of that case, noting that its statements limiting liability under § 216.6(1) to employers "did not address the question of whether a supervisor could be held personally liable under section 216.6(1)(a)." *Id.* at 875. With respect to *Sahai,* the Court emphasized its finding that the "any person" language of § 216.6 could extend liability to entities other than an employer, noting: "In *Sahai,* we simply denied that the physician was in a position to control the company's hiring decision, therefore leaving open the possibility that supervisors are subject to individual liability." *Id.* at 876.

Persuaded somewhat by the reasoning of courts interpreting similar statutes in

---

3. Four Iowa Supreme Court justices dissented in *Sahai,* while one justice concurred in the result only. Referencing the statutory language of § 216.6(1)(a) and the definition of "person" in § 216.2(12), the dissent stated: "The majority concedes, as it must, that persons other than employers may be held liable under Iowa Code section 216.6(1)(a). The statute is abundantly clear on this point." *Sahai,* 557 N.W.2d at 903 (Lavorato, J., dissenting).

4. The ICRA defines the term "employer" separately from the term "person." An "employer" is defined as "the state of Iowa or any political subdivision, board, commission, department, institution, or school district thereof, and every other person employing employees within the state." Iowa Code § 216.2(7).

the Second Circuit and in California,[5] the *Vivian* court ultimately answered the certified question in the affirmative, concluding that "a supervisory employee is subject to individual liability for unfair employment practices under Iowa Code section 216.6(1) of the Iowa Civil Rights Act." *Id.* at 878. In reaching this conclusion, the Court specifically stated:

> The legislature's use of the words "person" and "employer" in section 216.6(1), and throughout the chapter, indicates a clear intent to hold a "person" subject to liability separately and apart from the liability imposed on an "employer." A contra interpretation would strip the word "person" of any meaning and conflict with our maxim of statutory evaluation that laws are not to be construed in such a way as to render words superfluous. Moreover, we are guided by what the legislature actually said, rather than what it could or should have said.

*Vivian*, 601 N.W.2d at 878 (internal citations omitted).

This Court believes that *Grahek* and the subsequent case law can be reconciled with each other and with the statutory language of § 216.6(1)(a). The statute clearly provides that it is unlawful for any "person ... to discharge any employee" or to "otherwise discriminate in employment against ... any employee" on the basis of discriminatory factors. *Grahek* is entirely consistent with the language of the statute because, with regard to "discharge" and "otherwise discriminat[ing] in employment," the statute clearly implies an employee/employer relationship. Indeed, the term "employee" under the ICRA is specifically defined as "any person employed by an employer," while the term "employer" refers to "every other person employing employees within the state." Iowa Code § 216.2(6), (7). Thus, only an "employer" could reasonably "discharge any employee" and only an "employer" could "otherwise discriminate in employment" against "any employee."

■ Likewise, the Iowa court's recognition in *Sahai* that the "any person" language of § 216.6(1) may encompass "some situations in which a person guilty of discriminatory conduct is not the actual employer of the person discriminated against," and the court's specific conclusion in *Vivian* that supervisory employees may be subjected to liability under § 216.6(1), are consistent with the statutory language and with *Grahek*. This is because *Sahai* and *Vivian* both essentially recognized the fact that when an employer is a corporation or other institutional entity, it must act through actual people, such as supervisory employees. Thus, when an actual person is acting in such a way that he or

---

**5.** The *Vivian* court discussed the Second Circuit's interpretation of the New York Human Rights Law, which contains an aiding and abetting provision resembling that found in the ICRA. *Vivian*, 601 N.W.2d at 877 (discussing *Tomka v. Seiler*, 66 F.3d 1295 (2d Cir. 1995)). Pointing out that the *Tomka* court determined that it was "an unlawful discriminatory practice 'for *any person* to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden [under the New York Human Rights Law],'" the *Vivian* court stated that the "reasoning of the *Tomka* court again gives support to our belief that the Iowa legislature intended the ICRA to be broad enough to embrace supervisor liability inasmuch as it included an aiding and abetting statute specifically prohibiting a discriminatory practice by 'any person.'" *Id.* at 877–78. The *Vivian* court further recognized that an interpretation of the harassment provision under California's Fair Housing and Employment Act was sufficiently comparable to the ICRA to be instructive. *Id.* at 877 (citing *Janken v. G.M. Hughes Elec.*, 46 Cal.App.4th 55, 53 Cal. Rptr.2d 741 (1996)). In *Janken*, the California appellate court "recognize[d] that the language 'any person' extends to individuals and thereby includes supervisory employees." *Id.* (citing *Janken*, 53 Cal.Rptr.2d at 745).

she is "in a position to control the company's hiring decisions," that person may be subject to individual liability as essentially an equivalent to an "employer."

■ In its efforts to convince the Court to read *Grahek* as a bright-line rule, ADM interprets *Vivian* as "address[ing] the narrow issue of whether a supervisor, employed by the plaintiff's employer, could be held personally liable to the plaintiff under ICRA 216.6(1)(a)." Def.'s Br. at 2. ADM states that the *Vivian* court "specifically distinguished the case from [*Grahek*] where [the] Iowa Supreme Court held there was no liability for a *non-employer third party.*" *Id.* Thus, according to ADM, Plaintiff cannot take advantage of the *Vivian* decision unless ADM either employed her or was a "supervisor working for her employer." *Id.* at 2–3. The Court disagrees with ADM's contentions in two respects. First, as explained in detail *supra,* this Court reads *Vivian's* analysis of *Grahek* as an attempt to clarify that *Grahek's* holding is overly broad when applied outside of the specific factual context of that case, not as a reaffirmance that non-employer third parties can never be held liable under § 216.6(1)(a). Second, while it is entirely possible, and even likely, that ADM cannot be held liable under § 216.6(1)(a) because it was not "in a position to control [BE & K's] hiring decisions," the precise contours of ADM's relationship with BE & K and with Plaintiff are not entirely clear at this early stage of the proceedings. While ADM contends that it was nothing more than a customer of BE & K, the allegations of Plaintiff's Complaint plausibly support an inference that ADM had supervisory authority over Plaintiff's employment. Thus, for purposes of the present Rule 12(b)(6) Motion to Dismiss, Plaintiff has alleged sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly,* 127 S.Ct. at 1965, 1974.

### B. *Iowa Code § 216.11*

Even assuming that Plaintiff's claim should or will ultimately fail under § 216.6(1)(a), Plaintiff's claim would nonetheless survive the present motion to dismiss because Plaintiff has stated sufficient facts to raise a reasonable expectation that discovery will lead to evidence of her claim under the aiding and abetting provision of the ICRA. Indeed, ADM's staunch reliance on the fact that it was not Plaintiff's "employer" fails to account for the aiding and abetting provision, particularly in light of *Vivian's* conclusion that the Iowa legislature clearly intended to hold "persons" subject to liability "separately and apart from the liability imposed on an 'employer.'" *See Vivian,* 601 N.W.2d at 878.

No Iowa court has, thus far, directly addressed the scope of § 216.11. *See Missouri v. Hunter,* 459 U.S. 359, 366–68, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (stating that federal courts are "bound to accept" a state high court's construction of that state's statutes). The Eighth Circuit has stated that a court presented with an issue of first impression arising under state law bears the "responsibility to predict, as best [it] can, how [the state supreme court] would decide the issue." *Brandenburg v. Allstate Ins. Co.,* 23 F.3d 1438, 1440 (8th Cir.1994). Alternatively, the Court may certify a question of law to the Iowa Supreme Court. *See* L.R. 83 ("When a question of state law may be determinative of a cause pending in this court and it appears there may be no controlling precedent in the decision of the appellate courts of the state, any party may file a motion to certify the question to the highest appellate court of the state. The court may, on such motion or on its own motion, certify the question to the appropriate state court.");

Iowa Code § 684A.1 ("The supreme court may answer questions of law certified to it by ... a United States district court ... when requested by the certifying court, if there are involved in a proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state."). In this case, the Court does not believe that certification is warranted.[6]

 Under Iowa law, the "primary rule of statutory construction is to give effect to the intention of the legislature." *State v. Berry*, 247 N.W.2d 263, 264 (Iowa 1976). Secondary rules including "seek[ing] a meaning which is both reasonable and logical," "try[ing] to avoid results which are strained, absurd, or extreme,"

and "try[ing] to give meaning and effect to every part of the statute." *Id.* Despite these rules, a court should "not resort to rules of statutory construction when the terms of the statute are unambiguous." *State v. Green*, 470 N.W.2d 15, 18 (Iowa 1991); *Coralville Hotel Assoc., L.C. v. City of Coralville*, 684 N.W.2d 245, 248 (Iowa 2004) ("[P]recise and unambiguous language should be given its plain and rational meaning without resort to the rules of statutory construction."); *Dingman v. City of Council Bluffs*, 249 Iowa 1121, 90 N.W.2d 742, 746 (1958) ("We have long recognized the rule that where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself."). Ambiguity exists only "if reasonable minds

**6.** The decision of whether to certify a question of law is "committed to the discretion of the district court." *Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881–82 (8th Cir.1996) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974)). The Northern District of Iowa has articulated several factors useful in the determination: (1) the extent to which the legal issue under consideration has been left unsettled by the state courts; (2) the availability of legal resources which would aid the court in coming to a conclusion on the legal issue; (3) the court's familiarity with the pertinent state law; (4) the time demands on the court's docket and the docket of the state supreme court; (5) the frequency that the legal issue in question is likely to recur; (6) the age of the current litigation and the possible prejudice to the litigants which may result from certification; and (7) whether there is any split of authority among jurisdictions that have considered the issues presented in similar situations. *Olympus Alum. Prod. v. Kehm Enters., Ltd.*, 930 F.Supp. 1295, 1309 n. 10 (N.D.Iowa 1996); *Leiberkneckt v. Bridgestone/Firestone, Inc.*, 980 F.Supp. 300, 310 (N.D.Iowa 1997). In this case, several of the factors are neutral. Both the Iowa Supreme Court and this Court have ample legal resources, both are familiar with Iowa law, and time demands would like-

ly be similar on both courts. The fact that this lawsuit was recently filed weighs in favor of certification, as does the fact that this issue could potentially arise with some frequency. The remaining factors, however, weigh against certification. First, the Iowa Supreme Court has recognized that reviewing the case law of other states to interpret the ICRA is "of limited precedential value due to the considerable variation between those statutes and the ICRA." *Vivian*, 601 N.W.2d at 876. Indeed, after undertaking a review of what it deemed relevant law, the *Vivian* court concluded that the legislature's use of the term "person" indicated "a clear intent" to provide for liability beyond mere employer liability and that the legislature's choice of the term "person" must guide any interpretation of the statute. *Id.* at 878. Thus, as explained further throughout this order, this Court does not believe that the legal issue under consideration has been left *entirely* unsettled by Iowa courts. Moreover, the Court is firmly convinced that the fighting dispute in this case, and in other cases that might be filed under the ICRA, is not whether an entity that is neither an employer nor a supervisory employee *may* be held liable under the ICRA, but whether the specific facts in the case support the *imposition* of liability, i.e., the relevant issue is one of fact rather than law.

may differ or may be uncertain as to the meaning of the statute." *Id.*

The Court does not believe that the language of § 216.11 is ambiguous. The aiding and abetting provision clearly provides that it is an "unfair or discriminatory practice" for "[a]ny person to intentionally aid, abet, compel, or coerce another person to engage in any of the practices declared unfair or discriminatory by this chapter." Iowa Code § 216.11. The term "person," as discussed previously, includes "one or more individuals [or] corporations" and thus can plainly read to include ADM, a corporation. Accordingly, if ADM is found to have intentionally aided, abetted, compelled or coerced BE & K into discharging Plaintiff's employment on the basis of her race, ADM would be in violation of the ICRA pursuant to § 216.11.

*Vivian* supports a conclusion that ADM can be subjected to liability under the plain language of § 216.11 if its actions are ultimately deemed to have intentionally aided or abetted a discriminatory act by BE & K. *See Vivian,* 601 N.W.2d at 878 ("The legislature's use of the words 'person' and 'employer' in section 216.6(1), and *throughout the chapter,* indicates a clear intent to hold a 'person' subject to liability separately and apart from the liability imposed on an 'employer.' ") (emphasis added). Indeed, the *Vivian* court specifically found that a "contra interpretation would strip the word 'person' of any meaning" and that it must be "guided by what the legislature actually said, rather than what it could or should have said." *Id.* ADM counters, nonetheless, that neither *Vivian* nor the statute itself supports the "unwarranted leap" from "supervisor liability to customer liability." Def.'s Br. at 3. Were the Court to permit non-employer third parties to be subjected to liability under § 216.11, ADM contends, "the court could hire a caterer for an event and upon expressing displeasure with one of the servers sent by the catering company, find itself liable for employment discrimination if the caterer turns around and fires the server." *Id.* at 2–3. The Court finds ADM's objections in this regard to be without merit.

■ First, as discussed previously, the plain language of the statute is unambiguous and subjects "any person" to liability under the ICRA for intentionally aiding, abetting, compelling, or coercing another person to engage in discriminatory practices prohibited by the ICRA. Second, the Court notes that, while *Vivian* did state that the Iowa legislature "intended the ICRA to be broad enough to embrace supervisor liability inasmuch as it included an aiding and abetting statute specifically prohibiting a discriminatory practice by 'any person,' " the certified question of law was decided under § 216.6(1), not under § 216.11. *Vivian,* 601 N.W.2d at 878 (finding that a "supervisory employee is subject to individual liability for unfair employment practices under Iowa Code section 216.6(1) of the Iowa Civil Rights Act"). Accordingly, this Court does not believe that *Vivian* intended, in any fashion, to limit liability under § 216.11 to employers and their supervisory employees, particularly in light of the court's clear statement that reading the term "person" in such a restrictive manner would render it "superfluous." *Id.* Indeed, if the Iowa legislature had intended to restrict liability under § 216.11 to employers and their supervisory employees, it easily could have done so by using terminology other than the broadly defined term "persons." Third, ADM's caterer scenario simply does not bear weight. While technically the caterer could be liable under the ICRA, such liability would depend entirely on the specific facts of the case and whether those facts satisfy all elements of § 216.11, including

the scienter requirement. Such is also the case here. The mere fact that ADM *may* be subjected to liability under § 216.11 does not mean that it ultimately *will* be subjected to liability.[7] On the basis of the allegations in Plaintiff's Complaint, however, the Court concludes, at least at this early stage of the proceedings, that Plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974.[8]

## IV. CONCLUSION

For the reasons stated herein, ADM's Motion to Dismiss Plaintiff's Complaint (Clerk's No. 5) is DENIED.

IT IS SO ORDERED.

---

**7.** The Court additionally notes that the Iowa Supreme Court's construction of aiding and abetting in the criminal context may lend support to this Court's conclusion regarding the scope of § 216.11. In *State v. Maxwell*, it held that "[a]iding and abetting occurs when a person actively participates or in some manner encourages the commission of a crime prior to or at the time of its commission." 743 N.W.2d 185, 197 (Iowa 2008). At least one court has stated that there is a "colorable argument that the Iowa Supreme Court would draw upon its criminal jurisprudence" in interpreting the ICRA and hold that "aiding and abetting occurs under ICRA when a person actively participates or in some manner encourages the commission of an unfair or discriminatory practice prior to or at the time of its commission." *Asplund v. IPCS Wireless, Inc.*, No. 08–cv–2041, 2008 WL 3853336, at *5 (N.D.Iowa Aug. 14, 2008) (citing *Maxwell*, 743 N.W.2d at 197). ADM contends that even considering *Asplund*, Plaintiff's complaint "lacks any allegations that ADM encouraged the commission of an unfair discriminatory practice." Def.'s Reply at 4. The Court disagrees. Plaintiff's complaint expressly states that Bill Tanner, an ADM manager, "demanded that Ms. Johnson be fired from the ADM Warehouse" and that "ADM discriminated against [her] because of her race by influencing the decision of BE & K to terminate [her]." Compl. ¶¶ 9, 11. While ADM denies this allegation, in a Motion to Dismiss, the Court must presume the allegations to be true. Thus, when considered in the light most favorable to Plaintiff, it is reasonable to expect that discovery will lead to evidence of Plaintiff's claim under § 216.11.

**8.** The Court has reviewed the additional cases cited by ADM and does not find them persuasive in the context of the present Motion to Dismiss. First, with regard to *Harbit v. Voss*

*Petroleum, Inc.*, 553 N.W.2d 329 (Iowa 1996), the Court notes that the case was determined exclusively under Title VII and not under the ICRA. As noted previously, while Title VII is often used for guidance in interpreting the ICRA, it is "not controlling." *Vivian*, 601 N.W.2d at 873 (recognizing that "Title VII differs significantly from the ICRA"). ADM also cites *Stricker v. Fort Dodge Correctional Facility*, No. 02–1764, 2003 WL 23005245, at *2 (Iowa Ct.App. Dec. 24, 2003) for the proposition that Plaintiff cannot maintain suit against her employer's *customer* and that federal law guides interpretation of the ICRA. *Stricker*, however, was decided in the context of a motion for summary judgment, not in the context of a motion to dismiss. The *Stricker* court, in evaluating whether the plaintiff was an employee of the state, found that the "critical factor in determining whether Stricker may be considered an employee is the defendants['] right to control the means or manner of her performance." *Id.* After a review of all of the factual evidence in the record, it was determined that the state had "minimal control over Stricker's employment and that control was limited to security measures." *Id.* at *3. Thus, the *Stricker* court concluded that the state could not be liable under the ICRA on the specific *facts* of the case, not because a non-employer can never be liable under the ICRA. As noted previously, the standard in a motion to dismiss differs markedly from that applied to a motion for summary judgment, and the Court's task at this juncture is only to determine whether Plaintiff has stated a claim for relief that is plausible on its face, not whether she will ultimately be able to state facts sufficient to raise a genuine issue of material fact such that her claim should be permitted to proceed to trial. *See Twombly*, 127 S.Ct. at 1964–65 (noting that a claim should not be dismissed simply because a

court is doubtful the plaintiff will be able to prove all of the necessary factual allegations).