Lisa BLAZEK, Plaintiff,

v.

**UNITED STATES CELLULAR CORPORATION, USCC Payroll Corporation, Jeffrey Storey, Dave Sierck, Dennis Leroy, and Paul Daniels, Defendants.**

No. C 11–4056–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Nov. 28, 2011.

Jay Elliott Denne, Stanley E. Munger, Munger, Reinschmidt & Denne, Sioux City, IA, for Plaintiff.

Kerrie M. Murphy, Bret Alan Dublinske, Julie Tomka Bittner, Gonzalez, Saggio & Harlan, LLP, West Des Moines, IA, Tracy L. Farley, Adrianne C. Mazura, Quarles & Brady LLP, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS

MARK W. BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ....................................................1007
 A. Factual Background ..........................................1007
 B. Procedural Background .......................................1010

II. LEGAL ANALYSIS ................................................1011
 A. Applicable Standards ........................................1011
 1. Rule 12(b)(6) standards ..................................1011
 2. "Pleadings" within the meaning of Rule 10(c) and 12(b)(6) .........1013
 B. Sufficiency Of The Pleadings ................................1017
 1. Plausibility of the harassment claims .....................1017
 a. Arguments of the parties .............................1017
 b. Analysis .............................................1018
 2. Plausibility of the retaliation claims ...................1020
 a. Arguments of the parties .............................1020
 b. Analysis .............................................1021
 3. Plausibility of individual liability .....................1022
 a. Arguments of the parties .............................1022
 b. Analysis .............................................1022

 i. *Individual liability* ....................................1022
 ii. *"Supervisory" employee liability*.......................1023
 iii. *"Aiding and abetting" liability* ........................1024
 iv. *Factual bases for individual liability* .................1025

*III. CONCLUSION* ...............................................1027

This *Twom-bal*[1] motion to dismiss in this garden-variety employment discrimination case raises a Mobius strip like question of whether the defendants' claim of implausibility of the plaintiff's claims is itself implausible. More specifically, has a female retail wireless consultant for a cellular telephone company adequately pleaded her claims of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Iowa Civil Rights Act (ICRA), Iowa Code Ch. 216? The defendants do not think so, so they have moved to dismiss all of the plaintiff's claims for failure to state claims upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The defendants contend that the plaintiff's vague and conclusory allegations of harassment, discrimination, and retaliation are insufficient to state claims for relief that are plausible on their face or to establish any basis for individual liability on her state-law claims. The plaintiff counters that her amended complaint and incorporated administrative charge set forth sufficient facts to make her claims plausible.

*Twom-bal* motions to dismiss, especially in run of the mill single-plaintiff Title VII cases like this one, raise the specter that they will become as ubiquitous in federal employment discrimination cases as motions for summary judgment. A major concern of this potential pleading revolution is that it will further drive up the already too high cost of litigation under important federal employment civil rights statutes, especially where the *Twom-bal* motions are mostly frivolous, like this one, notwithstanding that it was signed by three different attorneys from two national law firms.

It would be exceptionally rare, at least in a case where the plaintiff is represented by counsel, that even if allegations in a complaint are found to be implausible under *Twom-bal,* such implausibility could not be easily cured by amending the complaint. Indeed, in the most complex *Twom-bal* motions I have ruled on, after granting the motions, the 13 consolidated class action plaintiffs amended their complaint and the case quickly settled for 18 million dollars.[2] So, pardon my skepticism in questioning whether the *Twom-bal* revolution has more to do with law firm economics than legitimate concerns about the adequacy of plaintiffs' initial pleading that are almost always so easily cured.

---

**1.** My nickname for the United States Supreme Court's recent twin decisions on pleading requirements in federal court. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**2.** *See In re Iowa Ready–Mix Concrete Antitrust Litig.,* 768 F.Supp.2d 961 (N.D.Iowa 2011) (concluding that the plaintiffs' pleading of an antitrust conspiracy was woefully lacking in factual allegations that would make their claim plausible, but dismissing without prejudice to allow amendment within a reasonable time); *In re Iowa Ready–Mix Concrete Antitrust Litig.,* No. C 10–4038–MWB (N.D.Iowa), Judgment (docket no. 310).

## I. INTRODUCTION

### A. Factual Background

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Thus, the factual background presented here is based, in the first instance, on the plaintiff's allegations in her Amended Complaint (docket no. 3).

Plaintiff Lisa Blazek alleges that, from April 17, 2007, until her constructive discharge on or about March 9, 2010, she was employed as a retail wireless consultant by defendants United States Cellular Corporation and USCC Payroll Corporation in Spencer, Clay County, Iowa. In her Amended Complaint, Blazek refers to these corporate defendants collectively as USCC, and I will do the same.[3] Blazek alleges that she was subjected to a sexually hostile environment due to the behavior of USCC and its employees and was subjected to retaliation by them after engaging in protected activity.

More specifically, Blazek alleges the following:

The harassment of Plaintiff included, but is not limited to, the following:

personal sex lives and the sex lives of customers coming into the store;

 b. Co-employees frequently asked Plaintiff sexually invasive questions related to her personal sex life;

 c. Co-employees frequently asked Plaintiff about her private parts;

 d. Co-employees frequently searched the phones of customers trying to find naked or sexually suggestive pictures and many times, those pictures were shown to Plaintiff;

 e. Plaintiff repeatedly complained to management about the sexually hostile work environment and was told that she had to deal with it herself since she was the one bothered by it;

 f. Following her complaints about the sexually hostile work environment, she was subjected to ostracism and retaliation from co-workers and management.

Amended Complaint, ¶ 18. She alleges, further, that USCC did not effectively respond to her complaints, so that the harassment continued; that the harassment caused her to lose working hours and pay; that, instead of investigating her claims of harassment, the store manager, defendant Paul Daniels, told her that she would have to take care of the problem herself and warned her against reporting harassment to higher management; that an investigator brought in by USCC accused her of having a relationship with one of the harassers and attempted to intimidate her into giving up her complaints; that, instead of disciplining any of her harassers, USCC told her she would have to move to a different location within the company to avoid the harassment; and that USCC's failure to take proper remedi-

---

3. The defendants assert, in a footnote in their Memorandum In Support Of Defendants' Motion To Dismiss (docket no. 17–1), 2 n. 1, that, upon receiving the original Complaint, which named only United States Cellular Corporation as a corporate defendant, their counsel notified Blazek's counsel that Blazek's prior employer was USCC Payroll Corporation, not United States Cellular Corporation, which is only a holding company. The defendants are correct that, rather than substituting USCC Payroll Corporation for United States Cellular Corporation in her Amended Complaint, Blazek simply added USCC Payroll Corporation as an additional corporate defendant. The defendants did not move to dismiss United States Cellular Corporation on the ground that it is not a proper party, however.

al action forced her to quit her job. *Id.* at ¶¶ 19–24. Blazek also alleges that she resisted the sexually hostile work environment fostered by USCC's conduct through repeated complaints to management employees, but that she was retaliated against for doing so, up to and including causing her constructive discharge. *Id.* at ¶¶ 27–29. She also alleges that the individual defendants aided and abetted the discrimination and retaliation to which she was subjected. *Id.* at ¶ 34.

Blazek contends that her Iowa Civil Rights Commission Complaint Form, attached to her Amended Complaint as Exhibit A, provides further detailed factual allegations concerning the harassing and retaliatory conduct to which she was subjected, and should be considered as part of the Amended Complaint for purposes of determining whether or not her Amended Complaint states claims upon which relief can be granted. The administrative charge does add that individual defendants Jeffrey Storey and Dave Sierck were "sales & service" employees of USCC, Paul Daniels was the "store manager," and Dennis Leroy was the "investigator" for her complaints. Exhibit A at ¶ 14. It also adds that the date of the "most recent" discriminatory incident was March 9, 2010, the day she quit. *Id.* at ¶ 15. It also adds considerable detail about the alleged harassment and retaliation.

Specifically, in parts of the administrative charge that Blazek identifies in response to the defendants' motion to dismiss, the charge clarifies the frequency of the alleged harassment as "constant," because "[t]here was not a day that went by in the United States' [sic] Cellular store in Spencer that there were not sexual comments being made," including employees commenting on their own sex lives or commenting on the sex lives of customers. *See id.* at ¶ 17 & 17(h). The administrative charge also clarifies the nature of the

alleged harassment, including the following details:

> Even though I made it clear to all employees that I did not want to be around that kind of behavior, they would still ask me questions like:
>
> - "How often do you and Colby [Blazek's husband] have sex?";
> - "Did Colby get a little last night?";
> - "What positions do you like?"
> - "How do you shave your bush?"
>
> When I would tell them to stop they would chastise me and say things like, "Oh, Lisa doesn't like that stuff. Are you going to run and tell on us again Lisa?"
>
> * * *
>
> Along with being subjected to the sexual taunting and questions, I was also forced to hear stories about the sex lives of other employees. Dave Seirck [sic] would give very specific details about his sexual relationship with his girlfriend. He would vividly describe sex acts going as far as to tell me that he once, "removed a tampon from her vagina when she was drunk." He would also tell me frequently how much he loved "vaginas".
>
> Unfortunately, customers were the unwitting subjects of much of the sexually hostile environment. When customers would bring their phones in for service, the first thing that would be done by other employees was to go through the photos on the customers' phones to try and find naked or sexually explicit photos. If photos of that nature were found, they would show them throughout the store. Many times I would be called over to look at something only to find out it was a sexual picture on a customer's phone. I have been shown a woman on her bed with her fingers in her vagina, a man lying on a bed naked

and other pornographic materials customers may have had on their phones. The male employees would also comment on the female customers when they would come into the store. They would poke each other, or sometimes me, and comment on their, "tits" or "ass". They would also make comments about what their "bushes" might be like....

Exhibit A at ¶ 17(h).

The administrative charge also provides details of Blazek's allegedly protected complaints and USCC's response, including the following:

When I told my manager Paul Daniels about these comments he would again tell me that I should deal with it myself since I was the one that was bothered by it. If I went to higher ups, his job and the harasser's jobs would be in jeopardy. If I didn't deal with it myself it could "cost him his job"....

... Again, I reported [co-employee comments about customers] to management and was again told that I would need to deal with it myself.

Exhibit A at ¶ 17(h). Blazek also alleges in her administrative charge,

Because I was a female who chose not to partake in the sexually hostile environment and because I complained about the sexually hostile environment on numerous occasions, I was subjected to harassment on a daily basis. By not participating in their sexually deviant actions and stories I was labeled a "prude" and a "goody-goody". I was subjected to name calling, jokes at my expense and actually made more of a target out of myself by refusing to play along. The employees would seek me out to show me things, set me up to see things they knew I did not want to see and put me in awkward positions with customers just because I refused to play along with their sexually hostile games.

I was also put in the position of fearing for my safety as one of the harassers stated that he didn't "trust myself around her." He was that angry with me for trying to put a stop to their harassment.

Exhibit A at ¶ 17(e).

She alleges that the response of management was not only unhelpful, but retaliatory:

When I reported the sexual harassment to my supervisor, Paul Daniels, and the subsequent retaliation I dealt with on a daily basis, his solution was to change my set schedule so that I didn't have to work with some of the worst offenders. Because I have small children and a family, I relied on that set schedule for all outside appointments. When he changed the schedule, he never discussed the change with me. He just changed the schedule. I had to completely readjust my life and outside schedule to fit with the change in work schedule I did not request nor did I desire.

When I reported the sexual harassment, sexually hostile environment and subsequent retaliation to human resources, Janet Youngclause, her offer was for me to uproot my family and move to a completely new town to relocate to another branch. She did not offer to remedy, or even address, the issues at this branch. She just suggested that shipping me off to another store would solve everyone's problems.

Exhibit A at ¶ 17(i); *see also id.* at ¶ 17(g) (alleging that her complaints resulted in reduced hours and pay). She alleges that the unhelpful and retaliatory response of USCC to her complaints included the conduct of the investigator eventually sent to investigate her complaints:

In addition to the constant barrage of harassment I received from other em-

ployees, I was subjected to very hostile harassment by the "investigator" they brought in to review my claims. Denis Leroy, this investigator, actually accused me of having, "something going on with" one of the harassers and that is why I was making a complaint. When I denied his outrageous allegation he got angry and started yelling at me. He would ask the same question over and over as if he was trying to catch me in a lie. I don't feel that he was brought in to investigate my complaint of sexual harassment; I feel he was brought in to investigate me. I feel he was brought in to frighten me and pressure me into admitting that I had no complaint. To be harassed by the person the company brought in to "investigate" my complaint is, in my opinion, the best example of United State's [sic] Cellular's systematic cover-up of the blatant, and clearly tolerated, sexual harassment of its employees.

Exhibit A at ¶ 17(e).

### B. Procedural Background

After receiving right-to-sue letters from appropriate state and federal agencies, Blazek filed a Complaint (docket no. 1) initiating this action against defendants United States Cellular Corporation, Jeffrey Storey, Dave Sierk, Dennis Leroy, and Paul Daniels on June 16, 2011. On June 29, 2011, prior to the filing of any response to the Complaint, Blazek filed her Amended Complaint (docket no. 3) adding USCC Payroll Corporation as a corporate defendant. In **Count I** of her Amended Complaint, Blazek asserts a claim of "sexual harassment-hostile work environment" against the corporate defendants;[4] in **Count II,** she asserts a claim of "retaliation" against the corporate defen-

dants; and in **Count III,** she alleges sexual harassment and retaliation in violation of Iowa Code Ch. 216 against "all defendants." Blazek alleges, generally, that her action is based on 42 U.S.C. § 2000e and the ICRA, so that it appears that **Counts I** and **II** are her federal claims, while **Count III** is her state-law claim. Blazek seeks compensatory and punitive damages, injunctive relief preventing the defendants from future unlawful practices, attorney's fees and costs, interest, and such other and further relief as is available under the law and that the court deems proper.

In response to Blazek's Amended Complaint, the defendants jointly filed a Motion To Dismiss (docket no. 17) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on September 6, 2011, attacking the sufficiency of the pleadings to state federal or state discrimination and retaliation claims or a basis for individual liability under the ICRA. Blazek filed her Resistance To Defendants' Motion To Dismiss (docket no. 18) on September 23, 2011, and the defendants filed a joint Reply (docket no. 19) on September 30, 2011.

Although I found no request for oral arguments on the defendants' Motion To Dismiss in the manner required by N.D. Ia. L.R. 7(c), I found that oral arguments were likely to be of benefit to me. Therefore, I set oral arguments on the defendants' joint Motion To Dismiss on November 10, 2011. See Order (docket no. 22). Owing to conflicts in the parties' schedules, those oral arguments were rescheduled for November 18, 2011. See Order (docket no. 23). At the oral arguments, plaintiff Blazek was represented by Jay Denne of Munger, Reinschmidt & Denne in Sioux City, Iowa. The defendants were repre-

---

**4.** As previously noted, Blazek referred to the corporate defendants collectively as USCC in her Amended Complaint.

sented by Tracy L. Farley of Quarles & Brady, L.L.P., in Chicago, Illinois.

The defendants' Motion to Dismiss is now fully submitted.

## II. LEGAL ANALYSIS

### A. Applicable Standards

#### 1. Rule 12(b)(6) standards

The defendants' Motion To Dismiss is pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides for a motion to dismiss 'on the basis of "failure to state a claim upon which relief can be granted."[5] In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court revisited the standards for determining whether factual allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Al-*

> *lain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, *e.g., Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic,* 550 U.S. at 555–56, 127 S.Ct. 1955 (footnote omitted).

Subsequently, in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court reiterated what is required to survive a motion to dismiss and the two working principles that underlie its decision in *Twombly:*

> To survive a motion to dismiss, a complaint must contain sufficient factual

---

5. Effective December 1, 2007, Federal Rule of Civil Procedure 12 was "amended as part of the general restyling of the Civil Rules· to make them more easily understood and to make style and terminology consistent throughout the rules." FED.R.CIV.P. 12, advisory committee's note. The advisory committee notes make it clear that the "changes are to be stylistic only." *Id.* The stylistic changes to Rule 12(b)(6) are in fact minimal, as Rule 12(b)(6) continues to authorize a motion to dismiss "for failure to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). Thus, the amendment did not change the standards for a Rule 12(b)(6) motion.

matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).

Two working principles underlie our decision in *Twombly.* First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [*Iqbal v. Hasty*] 490 F.3d [143],

at 157–158 [ (2d Cir.2007) ]. But where the well-pleaded facts do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal,* 556 U.S. at 678–79, 129 S.Ct. at 1949–50.

■ In light of the *Twom-bal* formulation of the standard, the Eighth Circuit Court of Appeals has recognized that, "[t]o survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level....'" *Parkhurst v. Tabor,* 569 F.3d 861, 865 (8th Cir.2009) (quoting *Bell Atlantic,* 550 U.S. at 555, 127 S.Ct. 1955). To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *B & B Hardware, Inc. v. Hargis Indus., Inc.,* 569 F.3d 383, 387 (8th Cir.2009) (quoting *Bell Atlantic,* 550 U.S. at 570, 127 S.Ct. 1955); *accord Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Bell Atlantic,* 550 U.S. at 557, 127 S.Ct. 1955).

■ In short, what is ordinarily required is pleading of allegations sufficient to raise a plausible inference as to each claim or cause of action. *See Iqbal,* 556 U.S. at 677–80, 129 S.Ct. at 1949–50; *accord Hamilton v. Palm,* 621 F.3d 816, 818–19 (8th Cir.2010); *Parkhurst,* 569 F.3d at 865 ("To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level ....'" (quoting *Bell Atlantic,* 550 U.S. at 555, 127 S.Ct. 1955)); *B & B Hardware, Inc.,* 569 F.3d at 387 ("[T]he complaint must allege 'only enough facts to state a claim to relief that is

plausible on its face.' " (quoting *Bell Atlantic*, 550 U.S. at 570, 127 S.Ct. 1955)). Moreover, allegations that raise plausible inferences of alternative scenarios, one that satisfies a particular element and one that does not satisfy that element, are sufficient to state a claim, because "[w]hich inference will prove to be correct is not an issue to be determined by a motion to dismiss." *Hamilton*, 621 F.3d at 819 (noting that the plaintiffs' complaint raised plausible inferences of both employee and independent contractor status, in support of the "employee status" element of his claim that the purported employer negligently breached its duty to maintain a safe workplace for its employees).

District courts in this circuit agree that this pleading standard does *not* require an employment discrimination plaintiff to make out or plead facts related to each element of a *prima facie* case of discrimination in his or her complaint, but the claim must be facially plausible and the complaint must give fair notice to the defendant of the basis for the claim. *See, e.g., Ginsburg v. Concordia Univ.*, 2010 WL 3720186, *2 (D.Neb. Sept. 14, 2010) (slip op.) (citing *Fowler v. Scores Holding Co., Inc.*, 677 F.Supp.2d 673, 679 (S.D.N.Y. 2009), and ultimately holding that the plaintiff did not plead facts showing more than a possibility that his religion, rather than a coaching decision, was the basis for his termination from a religious school, because more facts were required to provide some basis to infer that he was fired due to his religion); *Martin v. ReliaStar Life Ins. Co.*, 710 F.Supp.2d 875, 887 (D.Minn.2010) (distinguishing between the facts pleaded by the plaintiffs giving fair notice of their claim and mere conclusory allegations); *Harris v. Missouri Dep't of Mental Health*, 2009 WL 152105, *2 (E.D.Mo. Jan. 21, 2009) (also finding detailed factual allegations sufficient to support race discrimination claims). I agree. Nevertheless, pleading facts supporting each element of a *prima facie* case might be the safest way to forestall a *Twom-bal* "plausibility" challenge to the pleadings.

Unfortunately, this pleading standard may impose upon employment discrimination plaintiffs, even ones who have obtained more than cursory consideration of their administrative charges, a greater knowledge of the facts supporting their claims than they can reasonably be expected to have before filing suit and obtaining discovery. Moreover, my experience with the routine use of summary judgment motions in employment discrimination cases, even when any reasonably objective review of the record demonstrates that there are genuine issues of material fact, suggests that defendants will just as eagerly—and unreasonably—assert the lack of any plausible basis for employment discrimination claims at the pleading stage. Doing so will impose upon plaintiffs, who are usually at a disadvantage in terms of resources that they can bring to bear to litigate their claims, yet more costs and burdens before they can bring their claims before a jury. A zealous defense does not necessarily require invocation of every potential procedural bar to an employment discrimination lawsuit, particularly when an expeditious determination of the merits by a factfinder would often be a more cost-effective means of disposing of claims. After all, inexpensive resolution on the merits, not procedural gamesmanship, is supposed to be the point of the rules of civil procedure. *See, e.g.*, FED.R.CIV.P. 1 (the rules of civil procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").

### 2. *"Pleadings" within the meaning of Rule 10(c) and 12(b)(6)*

In deciding whether a "plausible" claim is stated, the court must still "accept

as true the plaintiff's well pleaded allegations." *Parkhurst,* 569 F.3d at 865 (citing *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)); *accord Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))); *B & B Hardware, Inc.,* 569 F.3d at 387 ("[W]e 'assume[ ] as true all factual allegations of the complaint'" (quoting *Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir.2007))). The court must also still "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.,* 514 F.3d 801, 806 (8th Cir.2008) (post-*Bell Atlantic* decision). On the other hand, "[w]here the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." *Benton v. Merrill Lynch & Co., Inc.,* 524 F.3d 866, 870 (8th Cir.2008) (citing *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997), for this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic* ).

One question raised here is where the "well pleaded allegations" or facts sufficient to raise a plausible inference may be found. The defendants looked only at the body of Blazek's Amended Complaint, but Blazek asserts that the more detailed factual allegations of her administrative charge, which was attached to her Amended Complaint as Exhibit A, must also be considered, citing Rule 10(c) of the Federal Rules of Civil Procedure. She argues that considering her Exhibit A as part of the pleadings pursuant to Rule 10(c) honors the intent of the "short and plain statement" requirement of Rule 8, because her Amended Complaint would not have been "short and plain," if she had included all of the factual detail in Exhibit A.

 Rule 10(c) states the following:

**(c) Adoption by Reference; Exhibits.** A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.

FED.R.CIV.P. 10(c). The defendants argue that Blazek's failure to reference her administrative complaint in relation to any allegations other than her allegations of exhaustion of administrative remedies means that the administrative complaint, although attached as an exhibit, is not properly adopted by reference within the meaning of Rule 10(c). They cite in support of this contention *Fanning v. Potter,* 614 F.3d 845 (8th Cir.2010), which states, "'[A] pleading incorporating allegations from other documents must clarify which statements are incorporated.'" *Fanning,* 614 F.3d at 851 (quoting *Shelter Mut. Ins. Co. v. Pub. Water Supply Dist. No. 7,* 747 F.2d 1195, 1198 (8th Cir.1984)). I find that the defendants have improperly conflated the first and second sentences of Rule 10(c) and that both *Fanning* and *Shelter Mutual Insurance,* on which *Fanning* relies, are distinguishable.

First, in my view, the two sentences of Rule 10(c) plainly state separate principles: (1) that a statement in a pleading may be "adopted by reference elsewhere in the same pleading or in any other pleading or motion"; and (2) that "[a] copy of a *written instrument* that is an exhibit to a pleading is a part of the pleading for all purposes." FED.R.CIV.P. 10(c) (emphasis added). Thus, "adoption by reference" is required only for a statement elsewhere in the pleading or in any other pleading or motion, but nothing requires adoption by reference of specific allegations in a written instrument that is an exhibit to the plead-

ing; such a written instrument, in its entirety, "is a part of the pleading for all purposes."

The decisions of the Eighth Circuit Court of Appeals in *Fanning* and *Shelter Mutual Insurance* may be instructive on the first principle, but they have nothing to do with the second or with the circumstances presented here. In *Fanning*, the court, referring to the "short and plain statement" standard in Rule 8(a)(2), not Rule 10(c), held that "[m]erely attaching documents filed in a different proceeding, alleging claims that are mentioned nowhere in the complaint, does not pass muster." *Fanning*, 614 F.3d at 851. Although the defendants argue that *Fanning* is applicable, because the administrative proceedings on Blazek's sexual harassment and retaliation claims are "different proceedings" from these proceedings, so that Blazek was required to adopt by reference the specific allegations in her administrative complaint that she is relying on here, I am not convinced. Even if I were, the claims mentioned in the administrative charge are *precisely* the same as the claims mentioned in her Amended Complaint in this action, so that *Fanning* involves distinguishable circumstances. Moreover, *Fanning* says nothing about the second principle set out in Rule 10(c), that is, that a "written instrument" attached to the pleading as an exhibit is a part of the pleading for all purposes. *Shelter Mutual Insurance* is also inapposite. In *Shelter Mutual Insurance*, in addition to the language quoted in *Fanning*, the court expressly relied on Rule 10(c) when it stated, "[A]n exhibit incorporated into a pleading must be attached." *See Shelter Mut. Ins.*, 747 F.2d at 1198. Again, the exhibit in question here *was* attached to Blazek's Amended Complaint. Furthermore, that language in *Shelter Mutual Insurance* goes to the *first* principle in Rule 10(c), regarding "adoption by reference," not the second principle, regarding the effect of attaching a written instrument as an exhibit. *Shelter Mutual Insurance* also involved a party's attempt to incorporate by reference another party's complaint into its assertion of a claim against yet another party. *See id.* at 1197. That plainly is not the circumstance here.

In the part of Rule 10(c) that I find may be applicable here, Rule 10(c) does not state that *any* exhibit is a part of a pleading, but that an exhibit that is "[a] copy of a written instrument" is a part of the pleading. *Id.* Some courts, notably the Seventh Circuit Court of Appeals, have recently taken a narrow view of what the "written instrument" language in the second sentence in Rule 10(c) makes part of the pleading. *See, e.g., Continental Cas. Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 731 n. 3 (7th Cir.2005) ("We have held that 'this rule includes a limited class of attachments to Rule 12(b)(6) motions' that are 'central to [the plaintiff's] claim,' especially when the court must interpret a contract to determine whether the plaintiff stated a claim." (quoting *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir.2002))); *see also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002) ("It would seem to follow [from Rule 10(c)] that if an attachment to an answer is a 'written instrument,' it is part of the pleadings."). On the other hand, the Seventh Circuit Court of Appeals had previously "interpreted the term 'written instrument' as used in Rule 10(c) to include documents such as affidavits, and letters, as well as contracts, and loan documentation." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452–53 (7th Cir.1998) (internal citations omitted) (holding that letters attached to the complaint to be part of the pleading, and rejecting the narrower interpretation of "written instrument" by the Third Circuit Court of Appeals as excluding "affidavits," citing *Rose v. Bartle*, 871 F.2d 331, 339–40 n. 3 (3d Cir.1989), because "[w]e

believe the broader interpretation comports with the traditionally generous nature in which we view pleadings").

Other courts have recently read Rule 10(c) to treat *any* exhibit as part of the pleading. *See Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 296–97 (6th Cir.2008) ("Sensations attached a copy of the Ordinance to its complaint as Exhibit A; under Rule 10(c), therefore, we treat the Ordinance as part of the pleadings."); *Pennington Seed, Inc. v. Produce Exchange No. 299,* 457 F.3d 1334, 1342 n. 4 (Fed.Cir.2006) ("Under Rule 10(c) of the Federal Rules of Civil Procedure, materials attached to a complaint may be considered as exhibits that are part of the complaint for determining the sufficiency of the pleadings."). Courts have specifically held that an administrative charge, attached to a complaint, is considered part of the pleading for Rule 10(c) purposes and the factual allegations therein may be considered in determining whether or not the complaint states a claim. *See Amini v. Oberlin College,* 259 F.3d 493, 503 (6th Cir.2001) (reversing the trial court's dismissal of a race discrimination complaint, because the trial court refused to consider the allegations contained in the plaintiff's EEOC charge, which was attached as an exhibit to the complaint, noting that, even though the complaint did not contain sufficient allegations to support a claim of racial discrimination, the EEOC charge did, and the EEOC charge, filed as a precondition to suit, was "central to his discrimination claim"); *see also Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 674 (2d Cir. 1995) (the plaintiffs made findings of an administrative investigation of their complaints of race discrimination part of their complaint by attaching it to their complaint, but they did not thereby adopt as true all of the contents of that document); *Danik v. Housing Auth. of Baltimore City,* 396 Fed.Appx. 15, 16 (4th Cir.2010) (treating all exhibits filed by the plaintiff with her complaint as part of the pleading, including her EEOC complaint).

The Eighth Circuit Court of Appeals has apparently accepted the broader interpretation of Rule 10(c). In *Meehan v. United Consumers Club Franchising Corp.,* 312 F.3d 909 (8th Cir.2002), citing Rule 10(c), the Eighth Circuit Court of Appeals stated, "The district court properly considered the franchise agreement and offering circular inasmuch as they were attached to the complaint." *Meehan,* 312 F.3d at 913. Although a franchise agreement is clearly a "written instrument" in the sense of "a contract," the court described the applicability of Rule 10(c) much more broadly, observing that " '*materials* attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint.' " *Id.* (emphasis added) (quoting *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986), and also citing *Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 921 (8th Cir.2001)).[6]

---

6. Interestingly, *Morton,* upon which *Meehan* relies, did not cite Rule 10(c) for the broader rule. However, one of the cases on which *Morton* in turn relied did construe Rule 10(c) as deeming a pleading to include any document attached to it as an exhibit or any document incorporated into it by reference. *See Morton,* 793 F.2d at 187 (relying, *inter alia,* on *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985)). Although Rule 10(c) was amended, in 2007, after the decisions in *Goldman* and *Meehan,* the version of Rule 10(c) in force at the time of the *Meehan* decision was not materially different from the current version. *See Meehan,* 312 F.3d at 913 (quoting the relevant language of Rule 10(c) in force at the time as "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *see also* Fed R.Civ.P. 10, Advisory Committee Notes, 2007 Amendments ("The language of Rule 10 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminolo-

Similarly, while Rule 12(d) of the Federal Rules of Civil Procedure requires "conversion" of a Rule 12(b)(6) motion to a motion for summary judgment, if "matters outside of the pleadings" are considered, *see* FED.R.CIV.P. 12(d), the Eighth Circuit Court of Appeals has explained that a court "may, however, consider some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'" *Noble Sys. Corp. v. Alorica Central, L.L.C.,* 543 F.3d 978, 982 (8th Cir.2008) (quoting *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999), with internal quotation omitted, and also citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007)). Indeed, more recently, in the context of a Rule 12(b)(6) motion to dismiss, the Eighth Circuit Court of Appeals observed, "In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, materials embraced by the pleadings, *exhibits attached to the pleadings,* and matters of public record.'" *Illig v. Union Elec. Co.,* 652 F.3d 971, 976 (8th Cir.2011) (emphasis added) (quoting *Mills v. City of Grand Forks,* 614 F.3d 495, 498 (8th Cir.2010), in turn citing *Porous Media,* 186 F.3d at 1079). Blazek's administrative complaint is undeniably "attached to the pleadings" as an exhibit. *Id.* The pleadings in this lawsuit "necessarily embrace" whether Blazek exhausted her administrative remedies, and that is the precise purpose for which Blazek has attached her administrative charge as Exhibit A, *see* Amended Complaint at ¶ 10, but her administrative charge also is entirely consistent with, and does not contradict, the substantive allegations in her Amended Complaint. *See Noble,* 543 F.3d at 982. Thus, her failure expressly to incorporate the allegations in her administrative charge by reference as part of her

pleading of factual allegations to support the substance of her sexual harassment and retaliation claims does not appear to be fatal.

In short, considering the factual allegations in Blazek's administrative charge as part of the pleadings is consistent with cases expressly doing so under Rule 10(c), *see Amini,* 259 F.3d at 503; is consistent with what appears to be the broad reading of Rule 10(c) by the Eighth Circuit Court of Appeals, *see Meehan,* 312 F.3d at 913; and is also consistent with the view of the Eighth Circuit Court of Appeals as to the scope of the pleadings under Rules 12(b)(6) and 12(d), *see Illig,* 652 F.3d at 976; *Noble,* 543 F.3d at 982. In an abundance of caution, however, I will consider *both* whether the allegations in the Amended Complaint itself, standing alone, are sufficient to state a claim, *and* whether those allegations as amplified by the attached administrative charge are sufficient to state a claim.

### B. Sufficiency Of The Pleadings

### 1. Plausibility of the harassment claims

#### a. Arguments of the parties

The defendants contend that the allegations in Blazek's Amended Complaint fall short of providing the facts necessary to state a plausible claim of hostile work environment harassment under Title VII or the ICRA. They contend that this is so, because Blazek has not alleged any facts suggesting that any of the alleged conduct was because she was a woman, nor any facts describing conduct sufficiently severe or pervasive to constitute an abusive and hostile work environment. The essence of this argument is that Blazek's allegations are, in the defendants' view, vague, conclusory, and insufficient to paint a picture of a work environment that was permeated with discriminatory intimidation, ridicule,

gy consistent throughout the rules. These

changes are intended to be stylistic only.").

and insults sufficient to alter the conditions of her employment. The defendants assert that nothing in Blazek's Amended Complaint indicates the names of the co-workers engaged in the conduct alleged, including whether any of the co-workers are the named individual defendants, when any of this conduct allegedly took place, whether it took place inside or outside of the workplace, whether all of it occurred in Blazek's presence, whether the conduct was unwelcome, or how often it occurred.

Blazek responds that the main body of her Amended Complaint sets forth a basic factual summary of her sexual harassment claim: that she was subjected to behavior of co-employees who frequently talked about their personal sex lives and the sex lives of customers in the store, frequently asked invasive questions relating to her personal sex life, frequently asked about her private parts, and showed her naked and sexually suggestive pictures found on customers' phones. She contends that these allegations are sufficient to support inferences of sexual harassment. Moreover, she contends that she has alleged ostracism as a result of her complaints of sexual harassment, which is also considered an overt sexual act. She contends that she is not required to allege that all instances of harassment were stamped with signs of overt discrimination. She also contends that the defendants have cited no authority requiring specific allegations concerning the identity of the harassers, precise times of alleged harassment,

or other details that the defendants contend are missing. She also points out that she *has* alleged that the individual defendants aided and abetted the harassment, so that those harassers are specifically identified and tied to the hostile environment. She also contends that one can plausibly infer from allegations that she was shown pictures on customers' phones that those incidents occurred in the workplace. She also contends that she has alleged that the harassment was frequent and it is an obvious inference that she found it unwelcome. If there were any doubt, she contends that her administrative charge fleshes out details of the harassment giving rise to her claims.

In their reply, the defendants reiterate that, even considering the administrative charge, Blazek has not pleaded sufficient facts to support her claims, because her allegations are merely conclusory. They contend that the few specific incidents identified in the administrative charge, relating to content on customers' phones, sexual comments, and questions about Blazek's sex life, are simply insufficient to paint a picture of a sufficiently hostile environment.

### b. Analysis

■■ I find that the defendants have failed to recognize the difference between "conclusory" allegations and "summary" *factual* allegations sufficient to plead a claim of sexual harassment under Iowa or federal law.[7] For example, in *Martin v.*

---

7. In considering Blazek's sexual discrimination claims, I will not distinguish between her claims under Title VII and comparable sexual discrimination claims under the ICRA. I have previously noted that "[i]t is widely accepted in the Eighth Circuit that generally no distinction is made between claims based on federal law and comparable state law claims under the ICRA." *Soto v. John Morrell & Co.*, 285 F.Supp.2d 1146, 1177–78 (N.D.Iowa 2003) (citing *Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1046 (8th Cir.2003); *Beard v. Fly-*

*ing J, Inc.*, 266 F.3d 792, 798 (8th Cir.2001)); *see King v. United States*, 553 F.3d 1156, 1160 n. 3 (8th Cir.2009) (noting that "[b]ecause the same analysis applies to age discrimination claims under the ADEA and the ICRA," the court need not discuss plaintiff's claims under the ICRA); *Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1095 n. 4 (8th Cir.2007) (same); *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 919 n. 2 (8th Cir.2000) ("The ICRA is interpreted to mirror federal law, including the ADEA") (citing *Montgomery v. John Deere*

*ReliaStar Life Ins. Co.,* 710 F.Supp.2d 875 (D.Minn.2010), the district court explained,

In this case, Plaintiffs allege multiple instances of discrimination on account of their status as African Americans. Unlike their white coworkers, Plaintiffs claim that they received lower pay, had unequal access to promotion opportunities, were overburdened with excess work, were subject to unfair criticism of their work product, and were refused overtime opportunities. These are not conclusory statements, but rather assertions of fact that put the Defendants on fair notice of the basis for this lawsuit. Moreover, due to the fact that Plaintiffs no longer work for any ING affiliate, they lack access to personnel records that would permit them to provide a more specific factual account of the purported discrimination.

*Martin,* 710 F.Supp.2d at 888. Similarly, here, Blazek does allege in her Amended Complaint that she was "frequently" harassed in various specific ways: co-employees talked about their personal sex lives and the sex lives of customers coming into the store, asked her sexually invasive questions related to her personal sex life, asked her about her private parts, showed her naked or sexually suggestive pictures found on customers' phones, and ostracized her when she objected to such conduct. Thus, like the plaintiffs in *Martin,* she has alleged multiple instances of sexual discrimination, not through conclusory statements, but through assertions of fact that put the defendants on fair notice of the basis for this lawsuit. *Id.; see also*

*Bell Atlantic,* 550 U.S. at 555–56, 127 S.Ct. 1955 (allegations must be sufficient to put the defendants on " 'fair notice of what the . . . claim is and the grounds upon which it rests' " (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99)).

Moreover, while Blazek is not required to plead facts related to each element of a *prima facie* case of sexual harassment, *cf. Ginsburg,* 2010 WL 3720186 at *2, her allegations do plausibly suggest all of those elements. As the Eighth Circuit Court of Appeals has explained,

To establish a *prima facie* claim of hostile work environment by non-supervisory co-workers, a plaintiff must show (1) that she belongs to a protected group; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on her membership in a protected group; (4) that the harassment affected a term, condition, or privilege of her employment by creating a hostile work environment; and (5) that the employer knew or should have known about the harassment and failed to take proper remedial action.

*Cross v. Prairie Meadows Racetrack & Casino, Inc.,* 615 F.3d 977, 981 (8th Cir. 2010); *accord Wilkie v. Department of Health and Human Servs.,* 638 F.3d 944, 952 (8th Cir.2011) (quoting *Cross* ). Blazek has plausibly alleged that she is a member of a group protected from sexual harassment, women; that the alleged harassment was unwelcome, in light of her factual allegations that she complained about the conduct to both her harassers and manage-

---

& Co., 169 F.3d 556, 558 n. 3 (8th Cir.1999)). This is because the Iowa Supreme Court has recognized federal precedent is applicable to discrimination claims under the ICRA. *See Soto,* 285 F.Supp.2d at 1178 (citing *Vivian v. Madison,* 601 N.W.2d 872, 873 (Iowa 1999), which states, "The ICRA was modeled after Title VII of the United States Civil Rights Act. Iowa courts therefore turn to federal law for

guidance in evaluating the ICRA."). However, federal law is not controlling, but merely provides an analytical framework for analyzing ICRA claims. *Id.* (citing *Hulme v. Barrett,* 449 N.W.2d 629, 631 (Iowa 1989)). With these principles in mind, unless a distinction between Title VII and the ICRA becomes critical, my analysis of Blazek's Title VII claims applies equally to her ICRA claims.

ment; and that her employer knew or should have known about the harassment, but failed to take proper remedial action, in light of her allegations that she told her store manager and an investigator about the harassment, but both refused to do anything about it. *See id.* (first, second, and fifth elements). She has also alleged facts plausibly suggesting actionable harassment, because her allegations involve ridicule and insult. *Id.* (fourth element). Indeed, her allegations clearly support a plausible inference of "pervasive," sexually-laden conduct. *See Wilkie,* 638 F.3d at 953 (noting that harassment must be "so severe or pervasive" that it meets the high threshold for a hostile work environment). While the defendants make much of Blazek's supposed failure to allege facts plausibly suggesting that the harassment was because of her sex, *see Cross,* 615 F.3d at 981 (third element), I disagree: Blazek alleges that male co-employees aided and abetted her harassment, which I find sufficient to raise the required inference.

That is not to say that Blazek's Amended Complaint is a model of sufficient pleading or that Blazek could not have reasonably included more factual detail that would have more clearly notified USCC and the individual defendants of their specific conduct giving rise to her claims. For example, Blazek nowhere explicitly alleges in her Amended Complaint that she is female or that her harassers were male; she does not allege that the kinds of conduct that she alleges was harassment was exclusively or primarily by male co-workers against her (or other female co-workers, if any); she nowhere alleges that the "frequent" harassment occurred within the statute of limitations period for such a claim, even if she could not identify specific dates for specific incidents; and she nowhere alleges the specific positions of each of the named defendants in the U.S. Cellular store in Spencer,

the nature of their specific working relationship with her, either as co-workers or supervisors, or the incidents or kinds of incidents of harassment each of them aided and abetted.

Even so, I do not find this to be a close case, on the basis of the allegations in the Amended Complaint alone. To the extent that it is permissible to consider the allegations in Blazek's administrative charge, as well, what is not plausible is the defendants' suggestion that Blazek has *not* pleaded sufficient facts to state her sexual harassment claim. These additional allegations provide more factual details, including specifics about incidents, conduct, and actors, demonstrating that far more was alleged than violation of a "general civility code," or "merely rude or unpleasant" conduct. *Wilkie,* 638 F.3d at 953 (stating, "'Title VII does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace,'" and that more than "'[m]erely rude or unpleasant' conduct" is required (quoting *Cross,* 615 F.3d at 981)).

The defendants' motion to dismiss Blazek's sexual harassment claim pursuant to Rule 12(b)(6) is denied.

### 2. *Plausibility of the retaliation claims*

#### a. *Arguments of the parties*

As to Blazek's retaliation claim, the defendants once again assert that Blazek has not pleaded any facts supporting any of her conclusions, including her conclusion that she made complaints that rose to the level of protected activity or was constructively discharged, where she does not plead facts establishing a causal connection between any complaints and her resignation. Blazek counters that she has alleged protected activity in the form of complaints about conduct plausibly rising to the level of a hostile environment, made to her man-

ager, a human resources worker, and an investigator, and evidence of a causal connection between the complaints and adverse employment actions, including a threat of an undesirable reassignment, ostracism, negative treatment, and constructive discharge.

### b. Analysis

As the Eighth Circuit Court of Appeals has explained,

> To state a prima facie case of retaliation, an employee must show that he engaged in protected activity; he suffered a materially adverse action that "would deter a reasonable employee from making a charge of employment discrimination"; and there is a causal connection between the protected activity and the adverse action. *Fercello [v. County of Ramsey ]*, 612 F.3d [1069,] 1077–78 [ (8th Cir.2010) ].

*Barber v. C1 Truck Driver Training, L.L.C.*, 656 F.3d 782, 801–02 (8th Cir.2011).

The analysis of the sufficiency of Blazek's pleading of her retaliation claim is much the same as the analysis of her sexual harassment claim. Although not required to plead facts related to each element of a *prima facie* case of retaliation, *cf. Ginsburg*, 2010 WL 3720186 at *2, Blazek's allegations do plausibly suggest all of these elements. I agree that the specific allegations in the retaliation claim are only conclusory allegations for each of the elements of the claim. *See* Amended Complaint, ¶¶ 27–29. However, the retaliation claim also expressly "repleads" all of the prior paragraphs of the Amended Complaint, "as if fully set forth herein," *see id.* at ¶ 26, thus satisfying the first principle of Rule 10(c). *See* FED.R.CIV.P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion"). Those allegations "adopted by reference" are sufficient to state a retaliation claim.

More specifically, contrary to the defendants' contentions, Blazek has alleged that she complained about conduct that she reasonably believed constituted sexual harassment. *Barber*, 656 F.3d at 801 (first element). The Eighth Circuit Court of Appeals applies the anti-retaliation provision of Title VII, 42 U.S.C. § 2000e–3(a), "broadly to cover opposition to 'employment actions that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful.'" *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir.2011) (quoting *Bonn v. City of Omaha*, 623 F.3d 587, 591 (8th Cir.2010)). Because I found, above, that Blazek has alleged a plausible claim of sexual harassment, it follows that her belief that she was complaining about sexual harassment was objectively reasonable. She has also plausibly alleged that she suffered adverse action that "would deter a reasonable employee from making a charge of employment discrimination,'" *Barber*, 656 F.3d at 801 (quoting *Fercello*, 612 F.3d at 1077–78), by alleging that her manager and human resources representative told her not to make further complaints to higher management and, instead, told her that she had to deal with the harassment herself since she was the one bothered by it; rescheduled her for inconvenient and fewer hours; told her she would have to move to a different location within the company to avoid the harassment; and subjected her to ostracism by co-employees. Finally, contrary to the defendants' contentions, she has alleged a causal connection between her complaints and these adverse actions by alleging that the adverse actions followed immediately upon her complaints. Again, while not necessary for Blazek to state a claim of retaliation, her additional factual allegations in her attached administrative charge provide additional detail. In light of the pleadings, I

cannot find that the defendants were not provided with fair notice of the basis for Blazek's retaliation claim. *See Bell Atlantic,* 550 U.S. at 555–56, 127 S.Ct. 1955 (allegations must be sufficient to put the defendants on " 'fair notice of what the . . . claim is and the grounds upon which it rests' " (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99)). Again, what is not plausible here is the defendants' contentions to the contrary.

The defendants' motion to dismiss Blazek's retaliation claim pursuant to Rule 12(b)(6) is denied.

### 3. Plausibility of individual liability
#### a. Arguments of the parties

Finally, the defendants contend that Blazek has failed to plead facts plausibly demonstrating a basis for individual liability under the ICRA against the individual defendants. They contend that Blazek's Amended Complaint is devoid of any allegations that any of the individual defendants were in a position to control the company's decisions. Blazek counters that, assuming that individual liability will only lie against a "supervisor," she has alleged that Daniels was her manager, with authority over her working environment. As to the rest of the individual defendants, as well as Daniels, Blazek contends that she has alleged an adequate basis for liability under Iowa's "aiding and abetting" provision, IOWA CODE § 216.11. She contends that she has alleged that Storey and Sierck aided and abetted the harassment, because they were the co-employees who harassed her, and that Leroy aided and abetted the harassment, because he was the investigator sent by the corporate defendants, but he accused Blazek of having sexual relations with one of her harassers. While Blazek acknowledges that no Iowa court has thus far interpreted the scope of § 216.11, the United States District Court for the Southern District of

Iowa has observed that it found nothing in Iowa case law suggesting that § 216.11 is limited to employers and their supervisory employees. In reply, the defendants assert that there is no reason that the definition of "person" under § 216.11 would be different from the definition under other provisions of the ICRA, which require a person in a position to control the company's decisions.

#### b. Analysis

##### i. Individual liability.
In *Vivian v. Madison,* 601 N.W.2d 872 (Iowa 1999), the Iowa Supreme Court held that "a supervisory employee is subject to individual liability for unfair employment practices under Iowa Code section 216.6(1) of the [ICRA]." *Vivian,* 601 N.W.2d at 878. In doing so, the Iowa Supreme Court reasoned as follows:

> The legislature's use of the words "person" and "employer" in section 216.6(1), and throughout the chapter, indicates a clear intent to hold a "person" subject to liability separately and apart from the liability imposed on an "employer." A contra interpretation would strip the word "person" of any meaning and conflict with our maxim of statutory evaluation that laws are not to be construed in such a way as to render words superfluous. *Kungys v. United States,* 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839, 858 (1988); *see also In re G.J.A.,* 547 N.W.2d 3, 6 (Iowa 1996). Moreover, we are guided by what the legislature actually said, rather than what it could or should have said. *Marcus v. Young,* 538 N.W.2d 285, 289 (Iowa 1995); *State v. Hatter,* 414 N.W.2d 333, 337 (Iowa 1987).

*Vivian,* 601 N.W.2d at 878. I note, however, that the certified question in *Vivian* was *only,* "Is a supervisory employee subject to individual liability for unfair employment practices under Iowa Code sec-

tion 216.6(1) of the Iowa Civil Rights Act?" *Id.* at 872. It did not address the potential liability of co-workers. *Accord Johnson v. BE & K Constr. Co., L.L.C.,* 593 F.Supp.2d 1044, 1052 (S.D.Iowa 2009) (also noting that, in *Vivian,* the Iowa Supreme Court addressed certified question concerning § 216.6(1), not co-worker liability under § 216.11). Moreover, the Iowa Supreme Court recognized that "[m]any states have found individual liability either by interpreting phrases such as 'employer or agent of the employer' to include supervisors or coworkers, or through recourse to aiding and abetting provisions similar to that of ICRA section 216.11." *Vivian,* 601 N.W.2d at 876 n. 3 (citing cases). Thus, the Iowa Supreme Court entertained the possibility that individual co-workers could be liable under the ICRA, but addressed only the question before it, which was whether *a supervisory employee* could be held individually liable. Nor did the Iowa Supreme Court expressly embrace the limitation on the definition of a "supervisor" as one exercising "control" that the defendants assert here. Rather, the Iowa Supreme Court observed that, in *Sahai v. Davies,* 557 N.W.2d 898 (Iowa 1997), it had "simply denied that the physician was in a position to control the company's hiring decisions, therefore leaving open the possibility that supervisors are subject to individual liability." *Vivian,* 601 N.W.2d at 876.

 Contrary to the defendants' contentions, I do not find that individual liability under IOWA CODE § 216.6(1) is limited to "supervisory" employees. *Vivian* does not stand for that proposition. If anything, the Iowa Supreme Court recognized in *Vivian* that the language of the ICRA would impose liability on any "person," not just an "employer" or a "supervisor." *See Vivian,* 601 N.W.2d at 878 ("The legislature's use of the words 'person' and 'employer' in section 216.6(1), and throughout the chapter, indicates a clear intent to hold a 'person' subject to liability separately and apart from the liability imposed on an 'employer.' "). I also note that, in a decision not cited by any of the parties, *Powell v. Yellow Book USA, Inc.,* 445 F.3d 1074 (8th Cir.2006), the Eighth Circuit Court of Appeals discussed individual liability of co-workers under the ICRA. The court concluded that "it is unclear whether ICRA [like Title VII] bars such individual liability." *Powell,* 445 F.3d at 1079 (citing *Vivian,* 601 N.W.2d at 878). The court did not reach the issue, because "[a]ssuming, without deciding, that ICRA would permit an action against a non-supervisory co-worker," that claim would fail, because the plaintiff had not shown that the conduct of the co-workers altered the terms of the plaintiff's employment. *Id.* Here, in contrast, I believe that Blazek has plausibly alleged that the conduct of the individual co-workers *did* alter the terms of her employment, because their conduct contributed to pervasive sexual harassment. *Compare id.* Thus, Blazek has stated a basis for individual liability of all of the individual defendants.

 *ii. "Supervisory" employee liability.* Even assuming, for the sake of argument, that individual liability under § 216.6(1) is limited to "supervisory" employees and that the "control" test is the relevant test for individuals exercising the required "supervisory" authority, the defendants have misstated that test. Adroitly using ellipses, they delete the critical qualifier on the "control" required: They state the test as whether the person was "in a position to control the company's ... decisions," Defendants' Memorandum In Support Of Defendants' Motion To Dismiss (docket no. 17–1) at 7 (purportedly quoting *Vivian,* 601 N.W.2d at 876), but what the Iowa Supreme Court actually said was that the defendant physician, in a prior case, was not "in a position to control the company's *hiring* decisions." *Id.* (emphasis added). Although the Amended Com-

plaint does not explicitly allege that Daniels, the store manager, had control of hiring decisions, it does allege that, after complaints to the "manager," Blazek lost working hours and pay, which are also hallmarks of a supervisor's "hiring" authority. I believe that Blazek has alleged a plausible basis for individual liability of Daniels as a "supervisor" under IOWA CODE § 216.6(1).

 *iii. "Aiding and abetting" liability.* "Supervisory" liability under § 216.6(1) is not the only basis for individual liability alleged by Blazek for any of the individual defendants. Rather, she bases her claim of individual liability on the "aiding and abetting" provision of the ICRA, § 216.11. That provision states the following:

> It shall be an unfair or discriminatory practice for:
>
> 1. Any person to intentionally aid, abet, compel, or coerce another person to engage in any of the practices declared unfair or discriminatory by this chapter.

IOWA CODE § 216.11(1). This statute plainly states that "any person" may be liable for aiding and abetting prohibited discrimination, so that the plain language is broad enough to embrace co-workers, as well as supervisors. Indeed, as noted above, the Iowa Supreme Court acknowledged in *Vivian* that § 216.11 is similar to provisions that other courts had found provided a basis for individual liability of co-workers. *Vivian*, 601 N.W.2d at 876 n. 3.

The parties have not cited, and I have not found, any other decision of the Iowa Supreme Court interpreting the "aiding and abetting" portion of § 216.11. As Blazek notes, however, then-Chief Judge Pratt[8] of the United States District Court

for the Southern District of Iowa did interpret the "aiding and abetting" provision of IOWA CODE § 216.11 in *Johnson v. BE & K Construction Co., L.L.C.*, 593 F.Supp.2d 1044 (S.D.Iowa 2009). In *Johnson*, Judge Pratt noted, first, that the ICRA does not impose liability only on "employers," "in light of *Vivian's* conclusion that the Iowa legislature clearly intended to hold 'persons' subject to liability 'separately and apart from the liability imposed on an "employer." ' " *Johnson*, 593 F.Supp.2d at 1050 (quoting *Vivian*, 601 N.W.2d at 878). Applying Iowa's "primary rule of statutory construction," giving effect to the intention of the legislature, Judge Pratt then observed,

> The Court does not believe that the language of § 216.11 is ambiguous. The aiding and abetting provision clearly provides that it is an "unfair or discriminatory practice" for "[a]ny person to intentionally aid, abet, compel, or coerce another person to engage in any of the practices declared unfair or discriminatory by this chapter." Iowa Code § 216.11. The term "person," as discussed previously, includes "one or more individuals [or] corporations" and thus can plainly [be] read to include ADM, a corporation. Accordingly, if ADM is found to have intentionally aided, abetted, compelled or coerced BE & K into discharging Plaintiff's employment on the basis of her race, ADM would be in violation of the ICRA pursuant to § 216.11.

*Johnson*, 593 F.Supp.2d at 1052 (also noting that *Vivian* pointed to the use of the words "person" and "employer" in § 216.6(1) and "throughout the chapter"). Judge Pratt then explained,

> First, as discussed previously, the plain language of the statute is unam-

---

8. On November 1, 2011, Judge Pratt was succeeded as chief judge of the Southern District of Iowa by Judge Gritzner.

biguous and subjects "any person" to liability under the ICRA for intentionally aiding, abetting, compelling, or coercing another person to engage in discriminatory practices prohibited by the ICRA. Second, the Court notes that, while *Vivian* did state that the Iowa legislature "intended the ICRA to be broad enough to embrace supervisor liability inasmuch as it included an aiding and abetting statute specifically prohibiting a discriminatory practice by 'any person,'" the certified question of law was decided under § 216.6(1), not under § 216.11. *Vivian*, 601 N.W.2d at 878 (finding that a "supervisory employee is subject to individual liability *for unfair employment practices under Iowa Code section 216.6(1) of the Iowa Civil Rights Act*"). Accordingly, this Court does not believe that *Vivian* intended, in any fashion, to limit liability under § 216.11 to employers and their supervisory employees, particularly in light of the court's clear statement that reading the term "person" in such a restrictive manner would render it "superfluous." *Id.* Indeed, if the Iowa legislature had intended to restrict liability under § 216.11 to employers and their supervisory employees, it easily could have done so by using terminology other than the broadly defined term "persons."

*Johnson*, 593 F.Supp.2d at 1052 (stating a third ground not relevant here, because it dispensed with an argument unique to the case). Thus, *Johnson* plainly reads "person" in § 216.11(1) to mean just that, *any* "person," including non-supervisory coworkers, just as I read the plain language of that provision. In short, I read Iowa Code § 216.11 to permit individual liability of co-workers for "aiding and abetting" sexual harassment and other conduct prohibited by the ICRA.

The defendants attempt to distinguish *Johnson* on the ground that it actually involved the liability of a third-party corporation under § 216.11(1), not a co-worker. That is true, and, so far as it goes, it does make *Johnson* different from this case. It does not, however, undermine the conclusion in *Johnson* that the "aiding and abetting" provision of § 216.11 applies to any "person," not just to an employer or supervisory employee. I now explicitly hold what Judge Pratt implied in *Johnson:* Iowa Code § 216.11 permits individual liability of co-workers for "aiding and abetting" sexual harassment and other conduct prohibited by the ICRA.

The defendants also assert that it would be inconsistent with *Vivian* to interpret "person" in § 216.6(1) to mean a "supervisory employee," but to interpret the same term to apply to co-workers in § 216.11. This argument fails, because nothing in *Vivian* limited the interpretation of "person" in § 216.6(1) or anywhere else in the ICRA to "employers" and "supervisory employees." Instead, as Judge Pratt pointed out in *Johnson*, there is nothing to indicate "that *Vivian* intended, in any fashion, to limit liability under § 216.11 to employers and their supervisory employees, particularly in light of the court's clear statement that reading the term 'person' in such a restrictive manner would render it 'superfluous.'" *Johnson*, 593 F.Supp.2d at 1052 (citing *Vivian*, 601 N.W.2d at 878). Reading "person" consistent with its plain meaning throughout the ICRA is appropriate, and that plain meaning encompasses co-workers.

Thus, the individual defendants are not entitled to dismissal of Blazek's claims on the ground that they cannot, as a matter of law, be held liable under § 216.11.

*iv. Factual bases for individual liability.* Having rejected the individual defendants' arguments that §§ 216.6 and 216.11 do not apply to them, as a matter of law, the remaining question is whether

Blazek has pleaded a *factual basis* sufficient to make her claims of individual liability plausible. This is a question that the defendants, in their zeal to assert implausible arguments for dismissal of all of Blazek's claims, largely overlooked.

Blazek has alleged that the individual defendants aided and abetted the harassing and retaliatory conduct in this case. Amended Complaint at ¶ 34. That allegation is a legal conclusion, however, insufficient to withstand a Rule 12(b)(6) motion to dismiss. For example, in *Walker v. Barrett*, 650 F.3d 1198 (8th Cir.2011), the Eighth Circuit Court of Appeals affirmed the district court's dismissal of a plaintiff's childhood sexual abuse claim against a school district and an individual on an "aiding and abetting" theory, as follows:

> Even if Walker could sue the School District and Hetherington for childhood sexual abuse, under an aider/abettor or a ratification theory of liability, he has not pleaded any factual basis for such claims. Instead, he merely alleged that the School District and Hetherington "aided and abetted Defendant Barrett's childhood sexual abuse" and "condoned and ratified the unlawful and abusive conduct ... by failing to repudiate it." These legal conclusions, without any supporting factual allegations, are insufficient to survive a motion to dismiss. *See Iqbal,* 129 S.Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955)).

*Walker,* 650 F.3d at 1209–10. The same is true here: In her Amended Complaint, Blazek alleges legal conclusions that the individual defendants "aided and abetted" the harassment and retaliation, without any supporting factual allegations, which, standing alone, are not enough to survive a motion to dismiss. The question is whether there are any additional *factual* allegations, in either the Amended Complaint itself or the administrative charge attached to that pleading as an exhibit and, therefore, considered part of that pleading.

 There are few *factual* allegations concerning specific conduct by the individual defendants in either Blazek's Amended Complaint or her administrative charge. In her Amended Complaint, Blazek does allege that defendant Daniels did not investigate her complaints and, instead, told her "that she would have to take care of the problem herself, and ... warned her against reporting the hostile environment to higher management." Amended Complaint at ¶ 21. There are similar allegations concerning defendant Daniels in Blazek's administrative charge. *See* Exhibit A at ¶ 17(a) (alleging that Daniels told Blazek to deal with the situation herself, because if he talked to anyone about it, someone would be fired); *id.* at ¶ 17(d) (Daniels made it "clear" that Blazek was "on [her] own"); *id.* at ¶ 17(h) ("When I told my manager Paul Daniels about these comments he would again tell me that I should deal with it myself since I was the one that was bothered by it. If I went to higher ups, his job and the harasser's jobs would be in jeopardy. If I didn't deal with it myself it could 'cost him his job.'."). In addition, the administrative charge alleges that Daniels's solution to her complaints "was to change my set schedule," resulting in inconvenience and lost hours. *Id.* at ¶ 17(i). Although it may be by the thinnest of margins, these additional factual allegations do plausibly suggest that Daniels aided and abetted the harassment and retaliation by taking no action when Blazek complained and, instead, subjecting her to adverse scheduling. To put it another way, Blazek has alleged sufficient facts, in the Amended Complaint and the administrative charge, which is treated as part of her pleading, to put this defendant on fair notice of the basis for his individual

liability in this lawsuit. *Bell Atlantic,* 550 U.S. at 555–56, 127 S.Ct. 1955 (allegations must be sufficient to put the defendants on " 'fair notice of what the . . . claim is and the grounds upon which it rests' " (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99)). Therefore, defendant Daniels is not entitled to dismissal of the individual liability claims against him.

■ Blazek also alleges in her Amended Complaint that defendant Leroy, the investigator brought in by USCC purportedly to investigate her complaints, "accused [her] of having a relationship with one of the harassers and attempted to intimidate her into giving up her complaints." Amended Complaint at ¶ 22. She makes similar allegations against him in her administrative charge, which is considered part of her pleading. *See* Exhibit A at ¶ 17(e) (alleging that Leroy accused her of having something going on with one of the harassers and trying to intimidate her into dropping her complaint). Again, perhaps by a very thin margin, these allegations are sufficient to make a plausible claim that Leroy aided and abetted or participated in the harassment and retaliation, and they are enough to put this defendant on fair notice of the basis for his individual liability in this lawsuit. *Bell Atlantic,* 550 U.S. at 555–56, 127 S.Ct. 1955. Therefore, defendant Leroy is not entitled to dismissal of the individual liability claims against him.

There are no specific factual allegations concerning defendant Sierck's conduct to be found in the Amended Complaint. On the other hand, the administrative charge includes the following specific factual allegation:

> Along with being subjected to the sexual taunting and questions, I was also forced to hear stories about the sex lives of other employees. Dave Seirck [sic] would give very specific details about his sexual relationship with his girlfriend. He would vividly describe sex acts going as far as to tell me that he once, "removed a tampon from her vagina when she was drunk." He would also tell me frequently how much he loved "vaginas".

Exhibit A at ¶ 17(h). These allegations detail a specific factual incident or series of incidents sufficient to make Blazek's sexual harassment claim against Sierck plausible and to put him on fair notice of the basis for his individual liability in this lawsuit. *Bell Atlantic,* 550 U.S. at 555–56, 127 S.Ct. 1955. Therefore, defendant Sierck is not entitled to dismissal of the individual liability claims against him.

Neither the Amended Complaint nor the administrative charge makes any specific factual allegations against defendant Storey, however. Therefore, defendant Storey is the only individual defendant entitled to dismissal of the claims against him. Such dismissal is without prejudice to further amendment of Blazek's Complaint to allege a plausible factual basis for Storey's individual liability, as well.[9]

### III. CONCLUSION

I find that the defendants' arguments for dismissal of the sexual harassment and

---

**9.** I question the wisdom of plaintiffs routinely naming individual defendants in employment discrimination cases, even if they can allege a plausible factual basis for doing so. In my experience, virtually all individual defendants are voluntarily dismissed prior to trial, if not earlier. When the day of reckoning approaches, the vast majority of plaintiffs' lawyers recognize the substantial risk that even if they win, juries will find against the individual defendants and either exculpate the alleged corporate wrong-doer or allocate most if not all of the damages to the individuals who are often judgement proof. This leaves the plaintiffs with a moral victory, but little corporate wealth for the Robin Hood bar to redistribute. In my view, vengeance and an exaggerated belief in litigation "leverage" are poor reasons to drag a individual defendant through

retaliation claims against the corporate defendants for failure to allege "plausible" claims under *Twom-bal* is simply the same side of the implausible Mobius strip—itself implausible. Indeed, the only colorable arguments that the defendants assert in their joint Motion To Dismiss pertain to individual liability. They make a colorable claim that Blazek has not alleged a legally sufficient basis for individual liability under the ICRA, although that argument is colorable only because the question was not settled under Iowa law, not because the defendants' legal arguments against individual liability had any intrinsic merit—indeed, the defendants' legal arguments concerning individual liability under the ICRA were based on misrepresentations of the Iowa Supreme Court's decision in *Vivian.* Defendant Storey also makes a colorable argument that there are no factual allegations providing a plausible basis for his individual liability, where there are no factual allegations against him at all in either the Amended Complaint or the administrative charge attached to and considered part of Blazek's pleading.

Upon the foregoing, the defendants' September 6, 2011, joint Motion To Dismiss (docket no. 17) is **denied** as to **Counts I** and **II, denied** as to **Count III** against defendants Daniels, Leroy, and Sierck, but **granted** as to **Count III** against defendant Storey. Dismissal of **Count III** against defendant Storey is without prejudice to Blazek's filing of a further amendment to her Complaint, however.

**IT IS SO ORDERED.**

the federal court civil justice system in most employment discrimination cases. Ultimately, in reality, recovery against an individual defendant, for a whole host of reasons, is often as implausible as most *Twom-bal* motions.